**STATE OF WASHINGTON, DEPART-
MENT OF ECOLOGY, Petitioner,**

**v.**

**UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; Lee Thom-
as,\* Acting Administrator of the Envi-
ronmental Protection Agency; and
Ernesta B. Barnes, Regional Adminis-
trator of Region X of the Environmen-
tal Protection Agency, Respondent.**

**No. 83–7763.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1984.

Decided Feb. 6, 1985.

---

\* Lee Thomas has been substituted for William D. Ruckelshaus, Fed.R.App.P. 43(c).

Charles B. Roe, Jr., Sr. Asst. Atty. Gen., Olympia, Wash., for petitioner.

David Dearing, Lee R. Tyner, Dept. of Justice, Washington, D.C., for respondent.

Ziontz, Pirtle, Morisset, Ernstoff & Chestnut, amicus curiae.

Before WRIGHT, PREGERSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

The Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6901 et seq., creates a comprehensive federal program of hazardous waste management administered by the Environmental Protection Agency (EPA). RCRA also authorizes the states to develop and implement their own hazardous waste management programs "in lieu of" the federal program. This case presents the question whether EPA violated the requirements of RCRA when it refused to permit the State of Washington to apply its state hazardous waste regulations to the activities of all persons, Indians and non-Indians, on "Indian lands." We conclude that EPA has adopted a reasonable interpretation of RCRA and we therefore affirm the agency's decision.

I

RCRA requires EPA to promulgate regulations governing the generation, transportation, storage, and disposal of hazardous wastes. RCRA §§ 3002–3004, 42 U.S.C. §§ 6922–6924. EPA also must establish a permit system covering all hazardous waste facilities, to enforce the regulations. RCRA § 3005, 42 U.S.C. § 6925. The RCRA requirements apply to all persons. See RCRA § 3008, 42 U.S.C. § 6928. The statute defines "person" to include, *inter alia*, Indian tribes. See RCRA § 1004, 42 U.S.C. §§ 6903(15), 6903(13).

Like several other federal environmental statutes, RCRA provides a mechanism by which the states can administer their own hazardous waste programs "in lieu of the Federal program." RCRA § 3006, 42 U.S.C. § 6926. The state must apply to the EPA Administrator for authorization to implement its own program. The Administrator is required to authorize a state program on an interim basis if the state demonstrates that the program is "substantially equivalent" to the federal program. RCRA § 3006(c), 42 U.S.C. § 6926(c). The Administrator authorizes a permanent state program when he determines that the program is "equivalent" to the federal program, consistent with the federal program and other state programs, and adequately enforceable. RCRA § 3006(b), 42 U.S.C. § 6926(b). If a state chooses not to set up its own program, or if the Administrator decides that the state does not qualify for

authorization, EPA continues to administer the federal program in that state. Where a state program is in effect, EPA retains certain oversight and enforcement powers, including the power to withdraw authorization if the state program fails to comply with the federal requirements. RCRA § 3006(e), 42 U.S.C. § 6926(e); *see* 42 U.S.C. §§ 6928(a), 6934, 6973(a).

On May 3, 1982, the Governor of the State of Washington submitted an application for interim authorization pursuant to Section 3006(c). The complete application included an analysis by the Washington Attorney General of the state's authority over activities on Indian lands, as required by 40 C.F.R. 123.125(c) (recodified at 40 C.F.R. 271.125(c) (1984)). The Attorney General's analysis asserted that RCRA authorizes the State of Washington to regulate the hazardous waste-related activities of Indians on reservation lands. After the requisite review and public comment, EPA approved Washington's application for interim authorization "except as to Indian lands." 48 Fed.Reg. 34954 (1983). With respect to Indian lands, EPA concluded that the state had not adequately demonstrated its legal authority to exercise jurisdiction. *Id.* at 34957. EPA found that RCRA does not give the state jurisdiction over Indian lands, and that states could possess such jurisdiction only through an express act of Congress or by treaty. *Id.* Since Washington had cited no independent authority for its jurisdictional claim, EPA retained jurisdiction to operate the federal hazardous waste management program "on Indian lands in the State of Washington." *Id.*[1]

■ Washington now petitions this court for review of EPA's decision to exclude Indian lands from the approved state program, arguing that the agency misinterpreted RCRA. The state points out that

RCRA applies to all persons and all geographic areas, including Indians and Indian tribes. The statute expressly preserves the power of "any State or political subdivision thereof (to impose) any requirements ... which are more stringent than those imposed by (federal) regulations." RCRA § 3009, 42 U.S.C. 6929. Since tribal regulatory powers are not expressly preserved, the state argues that RCRA has eliminated such tribal powers, and that only the federal government and the individual states have authority to implement the RCRA regulatory program. As between the federal government and the states, Washington contends that the statute expresses a preference for state administration. The statute directs that the "Administrator (of EPA) shall ... grant an interim authorization to the State to carry out (its) program in lieu of the Federal program pursuant to this subchapter" if the state program meets the requirements for authorization. RCRA § 3006(c). Washington concludes that Section 3006 allows a state to enforce its program "in lieu of" the *entire* federal program in the states including that part applying to Indian country.

It is important at the outset to define the issue raised by the State of Washington's petition. Washington sought EPA authorization to apply its hazardous waste program to both Indian and non-Indian residents of Indian reservations. *See* 48 Fed. Reg. at 34956. In the Attorney General's analysis of state jurisdiction and again before this court, Washington contended that RCRA confers on the state the right to regulate all hazardous waste activities within the state, with no exceptions for Indian tribes or Indian lands. We hold today that the EPA Regional Administrator properly refused to approve the proposed state program because RCRA does not authorize the states to regulate Indians on

---

**1.** Washington expresses some confusion over the precise meaning of the term "Indian lands." The term appears several times in the RCRA regulations, but the regulations do not define it. In the course of this litigation, EPA has regarded it as synonymous with "Indian country", which is defined at 18 U.S.C. § 1151 to include

all lands (including fee lands) within Indian reservations, dependent Indian communities, and Indian allotments to which Indians hold title. We accept this definition as a reasonable marker of the geographic boundary between state authority and federal authority.

Indian lands. We do not decide the question whether Washington is empowered to create a program reaching into Indian country when that reach is limited to non-Indians. Contrary to the assumption of *amicus* State of California, Washington has made clear that it did not present such a program to EPA. Since our function is to review EPA's administrative decision, we will consider only the program that Washington did present. We do not address the legality of other programs that the state might have proposed.

## II

■ Initially we confront the question of our jurisdiction to entertain Washington's petition for review. RCRA gives each Court of Appeals jurisdiction to review an EPA action granting or denying interim authorization to a state within the circuit. RCRA § 7006(b), 42 U.S.C. § 6976(b). The statute, however, also provides that "a petition for review of action of the Administrator in promulgating any regulation, or requirement under this chapter ... may be filed only in the United States Court of Appeals for the District of Columbia, and such petition shall be filed within ninety days from the date of such promulgation...." RCRA § 7006(a)(1), 42 U.S.C. § 6976(a)(1). EPA argues that the regulations implementing Section 3006 of RCRA, which set forth procedures for interim authorization applications, established EPA's position that RCRA does not grant states the authority to regulate hazardous wastes on Indian lands. Since Washington did not seek review of those regulations within 90 days of their promulgation in 1980, EPA contends that Section 7006(a)(1) now bars review in this court.

EPA's argument fails because none of the regulations to which it refers sufficiently delineated EPA's present position that RCRA does not provide a source of state authority over Indian lands. The regulations neither alerted Washington to EPA's ultimate position nor dictated the order that Washington now seeks to have this court review. Two sections of the 1980 regulations address the problem of program authorization where a state "lack[s] authority to regulate activities on Indian lands." 40 C.F.R. § 123.1(j); 40 C.F.R. § 123.121(f).[2] Another section requires the state Attorney General to provide "an appropriate analysis of the State's authority" over Indian lands, where the state requests such authority. 40 C.F.R. § 123.125(c) (recodified at 40 C.F.R. § 271.125(c) (1984)). None of these provisions squarely sets forth the interpretation of RCRA that EPA now advances. One could infer from the regulations that RCRA does not generally authorize state jurisdiction on the reservations. Presumably the statements in the regulations would not be necessary if RCRA authorized state jurisdiction in all cases. From the language and context of these regulations, however, it also might reasonably be inferred that EPA did not intend to resolve questions of jurisdiction over Indian lands until those issues were raised in state applications for program authorization. Washington should not now be precluded from challenging the agency's treatment of Washington's application for interim authorization on the ground that the state failed to draw the proper inference from the regulations. Nor is the relief Washington seeks so inconsistent with the regulations that its petition can only be viewed as a belated attempt to review the regulations them-

2. 40 C.F.R. § 123.1(j) (recodified at 40 C.F.R. § 271.1(h) (1984)) provides:
   Partial State programs are not allowed for programs operating under RCRA final authorization. However, in many cases States will lack authority to regulate activities on Indian lands. This lack of authority does not impair a State's ability to obtain full program approval in accordance with this subpart, i.e., inability of a state to regulate activities on Indian

lands does not constitute a partial program. EPA will administer the program on Indian lands if the state does not seek this authority. 40 C.F.R. § 123.121(f) (recodified at 40 C.F.R. § 271.121(h) (1984)) provides:
   Lack of authority to regulate activities on Indian lands does not impair a State's ability to obtain interim authorization under this Subpart. EPA will administer the program on Indian lands if the State does not seek this authority.

selves. This court therefore has jurisdiction over Washington's petition under Section 7006(b), the grant of jurisdiction to review EPA authorization decisions.

### III

RCRA does not directly address the problem of how to implement a hazardous waste management program on Indian reservations.[3] The statutory language on which Washington relies sets forth the state's general regulatory powers, but does not specify its authority over Indian tribes or lands. The only mention of Indians in the statute is in Section 1004(13), 42 U.S.C. § 6903(13), which defines "municipality" to include "an Indian tribe or authorized tribal organization." This reference indicates only that tribes are regulated entities under RCRA, since "municipality" is included in the statutory definition of "person", RCRA § 1004(15), 42 U.S.C. § 6903(15), and the enforcement provisions of the statute apply to "any person," RCRA § 3008(a), 42 U.S.C. § 6928(a). The statute does not say whether the states have authority to enforce state hazardous waste regulations against tribes or individual Indians on Indian lands. The legislative history of RCRA is totally silent on the issue of state regulatory jurisdiction on the reservations. Congress apparently did not consider whether state programs authorized "in lieu of" the federal program would apply in Indian country.

When a statute is silent or unclear with respect to a particular issue, we must defer to the reasonable interpretation of the agency responsible for administering the statute. By leaving a gap in the statute, Congress implicitly has delegated policy-making authority to the agency. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council,* ── U.S. ──, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). In such a case, we may not substitute our judg-ment for that of the agency as long as the agency has adopted a reasonable construction of the statute. *Id.* 104 S.Ct. at 2783; *INS v. Jong Ha Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981). We must defer to the agency's interpretation even if the agency could also have reached another reasonable interpretation, or even if we would have reached a different result had we construed the statute initially. *Columbia Basin Land Protection Association v. Schlesinger,* 643 F.2d 585, 600 (9th Cir.1981). The agency's interpretation is especially weighty where statutory construction involves "reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation (depends) upon more than ordinary knowledge respecting the matters subjected to agency regulations." *Chevron, U.S.A.,* 104 S.Ct. at 2783, *quoting United States v. Shimer,* 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961).

Applying this deferential standard of review, we hold that EPA reasonably has interpreted RCRA not to grant state jurisdiction over the activities of Indians in Indian country. The statutory language cited by Washington does not express Congressional intent to extend state jurisdiction with sufficient clarity for us to conclude that the agency's interpretation is wrong. Implementation of hazardous waste management programs on Indian lands raises questions of Indian policy as well as environmental policy. It is appropriate for us to defer to EPA's expertise and experience in reconciling these policies, gained through administration of similar environmental statutes on Indian lands.

Our conclusion that the EPA construction is a reasonable one is buttressed by well-settled principles of federal Indian law. States are generally precluded from exercising jurisdiction over Indians in Indi-

---

3. As the current controversy illustrates, the problem is not merely academic. The parties and the *amici* Tribes agree that industrial activities on Indian lands within Washington create a potentially significant hazardous waste problem. Conversely, Indian reservations may be considered as potential locations for hazardous waste disposal sites, in Washington and elsewhere, because they often are remote from heavily populated areas. EPA Office of Federal Activities, *Administration of Environmental Programs on Indian Lands* 83 (1983).

an country unless Congress has clearly expressed an intention to permit it.[4] *Bryan v. Itasca County,* 426 U.S. 373, 376 n. 2, 96 S.Ct. 2102, 2105 n. 2, 48 L.Ed.2d 710 (1976); *McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 170–71, 93 S.Ct. 1257, 1261–62, 36 L.Ed.2d 129 (1973). This rule derives in part from respect for the plenary authority of Congress in the area of Indian affairs. *See Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 102 S.Ct. 894, 908, 71 L.Ed.2d 21 (1982); *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142–43, 100 S.Ct. 2578, 2582–83, 65 L.Ed.2d 665 (1980). Accompanying the broad congressional power is the concomitant federal trust responsibility toward the Indian tribes. *Santa Rosa Band of Indians v. Kings County,* 532 F.2d 655, 660 (9th Cir.1975), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977); *see Seminole Nation v. United States,* 316 U.S. 286, 297, 62 S.Ct. 1049, 1054, 86 L.Ed. 1480 (1942). That responsibility arose largely from the federal role as a guarantor of Indian rights against state encroachment. *See United States v. Kagama,* 118 U.S. 375, 383–84, 6 S.Ct. 1109, 1113–14, 30 L.Ed. 228 (1886). We must presume that Congress intended to exercise its power in a manner consistent with the federal trust obligation. *Santa Rosa Band,* 532 F.2d at 660.

The Washington tribes that appeared as *amici* in this case fear that their reservations will become "dumping grounds" for off-reservation hazardous wastes if the state is permitted to control the hazardous waste program on the reservations. Whether or not that fear is well-founded, the United States in its role as primary guarantor of Indian interests legitimately may decide that such tribal concerns can best be addressed by maintaining federal control over Indian lands. EPA's interpretation of RCRA permits this option.

Respect for the long tradition of tribal sovereignty and self-government also underlies the rule that state jurisdiction over Indians in Indian country will not be easily implied. *See White Mountain Apache Tribe v. Bracker,* 448 U.S. at 141–144, 100 S.Ct. at 2582–2584; *Bryan,* 426 U.S. at 376 n. 2, 96 S.Ct. at 2105 n. 2. Vague or ambiguous federal statutes must be measured against the "backdrop" of tribal sovereignty, especially when the statute affects an area in which the tribes historically have exercised their sovereign authority or contemporary federal policy encourages tribal self-government. *Rice v. Rehner,* 463 U.S. 713, 103 S.Ct. 3291, 3295, 77 L.Ed.2d 961 (1983).

In this case, of course, the state is being required to yield to an exercise of jurisdiction by the federal government, not by a

**4.** Washington relies on *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), for the proposition that state regulatory authority over reservation Indians may be implied from a statute that does not clearly grant such authority. In *Colorado River* the Court interpreted the McCarran Amendment, 66 Stat. 560, 43 U.S.C. § 666, which permits joinder of the United States in water rights adjudication in state court "where it appears that the United States is the owner" of some of the water rights in issue. The Amendment does not specifically mention Indian tribes or tribal water rights. Nevertheless, the Court in *Colorado River* held that the Amendment grants the state courts jurisdiction over water rights controversies involving Indian tribes. 424 U.S. at 809–13, 96 S.Ct. at 1242–44. Washington argues that a similar implied grant of authority may be read into RCRA to allow state regulation of the hazardous waste-related activities of reservation Indians.

Washington urges too broad a reading of *Colorado River.* The *Colorado River* action was not brought against the Indians themselves, but against the United States as legal owner of Indian water rights held in trust for the tribes. *Colorado River* does not squarely hold that the McCarran Amendment confers state jurisdiction over the tribes themselves. Moreover, the Court emphasized that its interpretation of the statute merely provided an alternative to a federal forum for adjudication of Indian water rights claims. *Id.* at 812–13, 96 S.Ct. at 1243–44. The same federal reserved water rights apply whether the action proceeds in federal court or state court. *Id.* at 813, 96 S.Ct. at 1244. In the case at bar, by contrast, a state wishes to impose laws that would determine the substantive rights of reservation Indians on the reservation. We decline to extend *Colorado River* to apply to these facts.

tribe. The sovereign role of the tribes, however, does not disappear when the federal government takes responsibility for the management of a federal program on tribal lands. The federal government has a policy of encouraging tribal self-government in environmental matters.[5] That policy has been reflected in several environmental statutes that give Indian tribes a measure of control over policymaking or program administration or both. These statutes include the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136(u), which permits the EPA Administrator to delegate authority for operating pesticide applicator certification programs to tribes, and the Clean Air Act, 42 U.S.C. § 7474(c), which allows tribes to control air quality on their reservations under the "Prevention of Significant Deterioration" program.[6]

The policies and practices of EPA also reflect the federal commitment to tribal self-regulation in environmental matters. In a 1980 statement approved by the Deputy Administrator, EPA announced that its policy is to "promote an enhanced role for tribal government in relevant decisionmaking and implementation of Federal environmental programs on Indian reservations." *EPA Policy for Program Implementation on Indian Lands*, December 19, 1980 at 5.[7] EPA has carried out the policy of self-determination in administering the various environmental statutes. For example, EPA promulgated regulations under FIFRA authorizing tribes to develop their own programs for certification of pesticide applicators, at a time when the statute provided only that "states" could submit certification plans. *See* 40 C.F.R. § 171.10 (promulgated 1975). Similarly, EPA delegated to Indian tribes the authority to classify their reservations under the "Prevention of Significant Deterioration" (PSD) standards of the Clean Air Act, even though the Act did not specifically authorize such delegation. 40 C.F.R. § 52.-21(g)(4) (promulgated 1978). As noted above, Congress subsequently amended both statutes expressly to permit tribal participation as set forth in the regulations. We cannot foreclose the possibility of similar developments under RCRA.

This court has endorsed the EPA effort to promote tribal self-government in environmental matters. In *Nance v. EPA*, 645 F.2d 701 (9th Cir.1981), we upheld the dele-

---

**5.** The current Administration has reaffirmed the national commitment "to strengthen tribal governments and lessen federal control over tribal governmental affairs.... Our policy is to reaffirm dealing with Indian tribes on a government-to-government basis and to pursue the policy of self-government for Indian tribes without threatening termination." *Statement by the President: Indian Policy*, January 24, 1983, at 2. Likewise, Congress, in the Indian Self-Determination Act of 1975, declared its "commitment to the maintenance of the Federal Government's unique and continuing relationship with and responsibility to the Indian people through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from Federal domination of programs for and services to Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services." 25 U.S.C. § 450a(b).

**6.** Certain environmental statutes provide that they are not meant to change the jurisdictional status of Indian lands. Safe Drinking Water Amendments of 1977, 42 U.S.C. § 300j–6(c)(1); Surface Mining and Reclamation Act of 1977, 30 U.S.C. § 1300(h). Washington argues that the absence of a similar provision in RCRA demonstrates Congress' intent to sweep away tribal powers of self-government in the area of hazardous waste regulation. This contention, if accepted, would reverse the fundamental principle that the established jurisdictional relationships between Indian tribes and the states remain intact unless Congress clearly expresses its desire to change them. We cannot assume that Congress intended in RCRA to substitute state authority for tribal authority on Indian lands, where the statute is unclear and other expressions of federal Indian policy are inconsistent with that result.

**7.** A more recent "discussion paper" prepared by the EPA Office of Federal Activities similarly recommended that the agency "endeavor where appropriate to give tribal governments the primary role in environmental program management and decisionmaking relative to Indian lands." *Administration of Environmental Programs on Indian Lands, supra* note 3, at 35. The paper noted that this approach advances the President's stated policy of tribal self-determination. *See* note 5 *supra*.

gation of authority to Indian governments under the PSD regulations, against the contention that the Clean Air Act permitted delegation only to the states. *Id.* at 712–14. The Clean Air Act specifies that "(e)ach State shall have the primary responsibility for assuring air quality within the entire geographic region comprising such state." 42 U.S.C. § 7407(a). Despite that language, we held that the statute permitted EPA to allow tribes to set their own air quality goals on their reservations. Citing the inherent sovereignty of Indian tribes and the principle of deference to an agency's interpretation of a statute, we concluded that "within the ... context of reciprocal impact of air quality standards on land use, the states and Indian tribes occupying federal reservations stand on substantially equal footing." *Id.* at 714. We accordingly declined to subordinate the tribes to state authority. *Id.*

In the case at bar, as in *Nance,* the tribal interest in managing the reservation environment and the federal policy of encouraging tribes to assume or at least share in management responsibility are controlling. We cannot say that RCRA clearly evinces a Congressional purpose to revise federal Indian policy or to diminish the independence of Indian tribes. Section 3006 of RCRA is far less explicit than the Clean Air Act provision at issue in *Nance,* which gave the states primary responsibility for the "entire geographic region" within the state.[8] RCRA merely authorizes state hazardous waste programs "in lieu of" the federal program. Since EPA could exclude state authority from Indian lands in *Nance,* it can certainly do so here.

EPA, having retained regulatory authority over Indian lands in Washington under the interpretation of RCRA that we approve today, can promote the ability of the tribes to govern themselves by allowing them to participate in hazardous waste management. To do so, it need not delegate its full authority to the tribes. We

therefore need not decide, and do not decide, the extent to which program authority under Section 3006 of RCRA is delegable to Indian governments. It is enough that EPA remains free to carry out its policy of encouraging tribal self-government by consulting with the tribes over matters of hazardous waste management policy, such as the siting of waste disposal facilities. *See Administration of Environmental Programs on Indian Lands, supra,* note 3, at 36–37. Other avenues of accommodating tribal sovereignty will doubtless become clear in the concrete administration of the federal program. The "backdrop" of tribal sovereignty, in light of federal policies encouraging Indian self-government, consequently supports EPA's interpretation of RCRA.

We therefore conclude that EPA correctly interpreted RCRA in rejecting Washington's application to regulate all hazardous waste-related activities on Indian lands. We recognize the vital interest of the State of Washington in effective hazardous waste management throughout the state, including on Indian lands. The absence of state enforcement power over reservation Indians, however, does not leave a vacuum in which hazardous wastes go unregulated. EPA remains responsible for ensuring that the federal standards are met on the reservations. Those standards are designed to protect human health and the environment. *See* 42 U.S.C. 6924. The state and its citizens will not be without protection.

The decision of the EPA Regional Administrator is AFFIRMED.

---

8. We note that the Clean Air Act has a "Retention of State Authority" provision analogous to the one in RCRA. 42 U.S.C. § 7416. Like the RCRA provision, the Clean Air Act provision refers to "states and political subdivisions," but not to Indian tribes.