**WYCKOFF COMPANY,**
Plaintiff-Appellant,

v.

**ENVIRONMENTAL      PROTECTION
AGENCY, the United States of America, and the Washington State Department of Ecology, Defendants-Appellees.**

No. 85–3518.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1986.

Decided Aug. 14, 1986.

Marvin B. Durning, Seattle, Wash., for plaintiff-appellant.

Robert L. Klarquist, Dept. of Justice, Washington, D.C., Jeffrey D. Goltz, Olympia, Wash., for defendants-appellees.

Before WALLACE and THOMPSON, Circuit Judges, and STEPHENS,* District Judge.

WALLACE, Circuit Judge:

Wyckoff Company (Wyckoff) brought an action for a judgment declaring that the Environmental Protection Agency (EPA) was without authority to issue two orders requiring Wyckoff to submit written proposals for the monitoring, testing, analysis, and reporting of hazardous wastes at two of Wyckoff's facilities. The district court denied Wyckoff's motion for a preliminary

* Honorable Albert Lee Stephens, Jr., United States District Judge, Central District of California, sitting by designation.

injunction restraining the EPA from enforcing those orders. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), and we affirm.

## I

Wyckoff owns and operates two wood treatment plants at which it uses hazardous chemicals as wood preservatives and stores hazardous wastes. Both plants are in the State of Washington. The EPA found that hazardous materials at one site had seeped into the surrounding soil, the groundwater, and into Puget Sound. At the other site, hazardous wastes had entered the surrounding soil, and likely the groundwater as well. The EPA determined that the storage and release of hazardous wastes at each of these facilities "may present a substantial hazard to human health or the environment." It issued orders requiring Wyckoff to submit written proposals for monitoring, testing, analysis, and reporting of the hazardous waste at the facilities.

## II

To obtain preliminary relief, the moving party must make a clear showing of either " '(1) probable success on the merits *and* possible irreparable injury *or* (2) sufficiently serious questions going to the merits to make them fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " *Lydo Enterprises v. City of Las Vegas,* 745 F.2d 1211, 1212 (9th Cir.1984) (*Lydo*), *quoting Ebel v. City of Corona,* 698 F.2d 390, 392 (9th Cir.1983) (emphasis in original); *see Wilson v. Watt,* 703 F.2d 395, 399 (9th Cir.1983). These articulations of the required showing do not express two separate tests, but are " 'merely extremes of a single continuum.' " *Lydo,* 745 F.2d at 1212, *quoting Benda v. Grand Lodge of Int'l Ass'n of Machinists,* 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). A weighing of the public interest is particularly important in cases, such as the one before us, where the public health and welfare may depend on unhindered enforcement of a federal environmental statute. *See United States v. Akers,* 785 F.2d 814, 823 (9th Cir.1986); *California v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1324 (9th Cir.1985).

We review a district court's denial of a preliminary injunction for abuse of discretion. *Sports Form, Inc. v. United Press Int'l, Inc.,* 686 F.2d 750, 752 (9th Cir.1982). To determine whether there has been an abuse of discretion we " 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Id., quoting Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Thus, we will not substitute our own judgment for that of the district court. *Id.* Nevertheless, a district court's denial of preliminary relief may be reversed if the court "misapprehends the law with respect to the underlying issues in litigation." *Id.*

Wyckoff contends that the district court's misapprehension of the law was the basis for its denial of relief in this case. We must consider whether the district court misconstrued the relevant statutory provisions in concluding that Wyckoff had little chance of success on the merits.

## III

The Resource Conservation and Recovery Act (Act), 42 U.S.C. § 6901 *et seq.,* was enacted to protect the national health and environment. *See* 42 U.S.C. §§ 6901, 6902. The Act confers on the Administrator of the EPA broad powers to regulate the storage, treatment, transportation, and disposal of potentially hazardous materials. *See* 42 U.S.C. § 6912(a). The EPA orders that Wyckoff challenges were issued in August 1984 pursuant to section 3013 of the Act, which provides:

If the Administrator determines, upon receipt of any information, that—

(1) the presence of any hazardous waste at a facility or site at which

hazardous waste is, or has been, stored, treated, or disposed of, or

(2) the release of any such waste from such facility or site

may present a substantial hazard to human health or the environment, he may issue an order requiring the owner or operator of such facility or site to conduct such monitoring, testing, analysis, and reporting with respect to such facility or site as the Administrator deems reasonable to ascertain the nature and extent of such hazard.

42 U.S.C. § 6934.

Wyckoff does not allege that there was any error in the Administrator's interpretation of the terms of section 3013, or in the Administrator's evaluation of the facts in this case. Instead, Wyckoff contends that section 3013 did not apply in the State of Washington at the time the orders were issued, because federal regulation under the Act had been superseded by the implementation of a federally approved state regulatory program under section 3006 of the Act. 42 U.S.C. § 6926 (1982).[1]

Section 3006 provides for federal authorization of state hazardous waste programs. 42 U.S.C. § 6926 (1982). The Administrator may refuse to authorize a state program if he timely finds that "(1) such State program is not equivalent to the Federal program under this subchapter, (2) such program is not consistent with the Federal or State programs applicable in other States, or (3) such program does not provide adequate enforcement of compliance with the requirements of this subchapter." 42 U.S.C. § 6926(b) (1982). If authorization is not properly denied, the "State is authorized to carry out [its hazardous waste program] in lieu of the Federal program ... and to issue and enforce permits for the storage, treatment, or disposal of haz-

ardous waste." *Id.* States may also request, and receive from the Administrator, "interim authorization" to carry out a hazardous waste program:

The Administrator shall, if the evidence submitted shows the existing State program to be substantially equivalent to the Federal program under this subchapter, grant an interim authorization to the State to carry out such program in lieu of the Federal program pursuant to this subchapter....

42 U.S.C. § 6926(c) (1982). Any action taken by the state under an authorized program "shall have the same force and effect as action taken by the Administrator under this subchapter." 42 U.S.C. § 6926(d) (1982). The Administrator retains power, after a public hearing, to revoke the authorization of any state program not operated in accordance with the requirements of federal hazardous waste law. 42 U.S.C. § 6926(e) (1982).

At the time the Administrator issued the section 3013 orders to Wyckoff, the State of Washington operated a state hazardous waste program that had received interim authorization from the Administrator, pursuant to section 3006(c). During the course of judicial proceedings, the state program has qualified as an authorized program under section 3006(b).

### IV

Wyckoff argues that because section 3006 authorizes state programs to be carried out "in lieu of the Federal program," Congress intended to revoke the EPA's power to issue orders under section 3013 where an authorized state program is in effect. The linchpin of Wyckoff's argument is that the term "program" in section 3006 encompasses "the sum of the hazardous waste management authorities and ac-

---

**1.** The Administrator's orders in this case were issued in August 1984, and the district court's order denying preliminary relief was issued on November 6, 1984. We consider the statutory language then in effect to determine whether the district court erred by concluding that the Administrator had authority to issue the August 1984 orders. The language of several relevant

sections of the Act was altered by amendment later in November 1984. Wyckoff concedes that the 1984 amendments do not affect the import of the statute for purposes of the questions addressed in this appeal. We agree. Nevertheless, wherever language of a cited section has been altered by the 1984 amendments, our citations will include the parenthetical "(1982)."

tivities described anywhere in subtitle C" of the Act, including section 3013. In short, Wyckoff contends that the EPA's power under section 3013 constitutes part of the "Federal program" that is supplanted by an authorized state program under section 3006. Wyckoff concludes that the Administrator thus lacked power to issue the challenged orders.

### A.

In reviewing an agency's construction of a statute that it administers, we must first address

> whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, .... the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron USA v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted) (*Chevron*). If the EPA's interpretation of section 3006 is reasonable, "[w]e must defer to the agency's interpretation even if the agency could also have reached another reasonable interpretation, or even if we would have reached a different result had we construed the statute initially." *Washington v. United States EPA*, 752 F.2d 1465, 1469 (9th Cir. 1985) (*Washington*); *see Chevron*, 467 U.S. at 843–45, 104 S.Ct. at 2782–83; *Train v. Natural Resources Defense Council*, 421 U.S. 60, 87, 95 S.Ct. 1470, 1485, 43 L.Ed.2d 731 (1975).

We can discern no clear congressional intent that section 3006 be read to disable the EPA from issuing orders under section 3013 wherever an authorized state hazardous waste program operates "in lieu of the Federal program." Wyckoff's argument that the EPA's power under section 3013 is part of the superseded "Federal program" has no unambiguous support in the Act. Far from expressly conferring on the terms "program" and "Federal program" the all-encompassing meaning that Wyckoff proffers, the Act does not even define these terms. *See* Act § 1004, 42 U.S.C. § 6903 (definitional provision). Further, nowhere in the Act or in its legislative history is there any clear indication that the EPA's section 3013 power is part of the "Federal program" to be supplanted under section 3006.

Indeed, section 3008 appears to refute the interpretation Wyckoff would have us adopt. Section 3008(a) provides in part:

> (1) Except as provided in paragraph (2), whenever on the basis of any information the Administrator determines that any person is in violation of any requirement of this subchapter, the Administrator may issue an order requiring compliance immediately or within a specified time period or the Administrator may commence a civil action in the United States district court in the district in which the violation occurred for appropriate relief, including a temporary or permanent injunction.
>
> (2) In the case of a violation of any requirement of this subchapter where such violation occurs in a State which is authorized to carry out a hazardous waste program under section 6926 of this title [(Act § 3006)], the Administrator shall give notice to the State in which such violation has occurred prior to issuing an order or commencing a civil action under this section.

42 U.S.C. § 6928(a)(1), (2) (1982); *cf.* 42 U.S.C. § 6973(a) (1982) (EPA may take any action necessary upon finding imminent and substantial danger "notwithstanding any other provision"). Since the Administrator may exercise section 3008 powers even where a state program is in effect, it is clear that Congress did not intend, by authorizing a state program "in lieu of the Federal program," to preempt federal *regulation* entirely.

Wyckoff attempts to salvage its reading of section 3006 by arguing that section

3008, unlike section 3013, explicitly reserves federal authority in the face of an authorized state program. Where powers are not expressly reserved, it argues, they are displaced by the state program. This argument, however, misstates the apparent function of section 3008(a)(2). Read in context, section 3008(a)(2) does not explicitly *reserve* federal authority; rather, it simply conditions the exercise of such authority on the provision of prior notice. In other words, were section 3008(a)(2) to be eliminated from the Act, the apparent effect would not be to withdraw federal authority under section 3008 wherever · authorized state programs were in effect; rather, it would be to free federal section 3008 authority of the notice requirement.

### B.

Having concluded that Congress did not clearly intend the interpretation proffered by Wyckoff, we have no difficulty finding that the EPA's interpretation of section 3006 is reasonable. The EPA's conclusion that its power to issue orders under section 3013 survives in those states where an authorized state program is operating is plainly consistent with a straightforward reading of the Act. Its reasonableness is further demonstrated by the fact that it comports with our opinion in *Washington.* In *Washington,* we upheld the EPA's refusal to authorize the State of Washington to apply its state program of hazardous waste regulations to activities of both Indians and non-Indians on Indian land. 752 F.2d at 1466. We held that despite the adoption of a state program in lieu of the federal program, the EPA would retain authority to regulate hazardous wastes on Indian lands, to the exclusion of state regulation of the activities of Indians on Indian land. *Id.* at 1472. While we had no occasion to hold that the territorial jurisdiction of federal and state agencies overlapped, *see id.* at 1468 ("We do not decide the question whether Washington is empowered to create a program reaching into Indian country when that reach is limited to non-Indians."), we recognized that "[w]here a state program is in effect, EPA retains certain *oversight and enforcement* powers, including the power to withdraw authorization if the state program fails to comply with the federal requirements." *Id.* at 1467 (emphasis added). We specifically cited section 3013 as one of the sections which the EPA retained its powers of "oversight and enforcement." *Id.* at 1467, *citing* 42 U.S.C. § 6934 (Act § 3013).

### V

Because the EPA's interpretation of section 3006 of the Act is a reasonable one, and is entitled to deference, we conclude that Wyckoff has an insubstantial chance of success on the merits in this case. Because the district court did not misapprehend the law, and properly applied the test for preliminary relief, we conclude that its denial of a preliminary injunction was not an abuse of discretion.

AFFIRMED.