# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-3775

_____

| | | |
|---|---|---|
| Harmon Industries, Inc., | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Carol M. Browner, in her official | * | |
| capacity as Administrator of the | * | |
| United States Environmental | * | |
| Protection Agency; United States | * | |
| of America; United States | * | |
| Environmental Protection Agency, | * | |
| | * | |
| Appellants. | * | |
| | * | Appeal from the United States |
| _____ | * | District Court for the |
| | * | Western District of Missouri. |
| Pacific Legal Foundation; Michigan | * | |
| Manufacturers Association; | * | |
| Mississippi Manufacturers | * | |
| Association; Illinois Manufacturers | * | |
| Association; South Carolina | * | |
| Chambers of Commerce; | * | |
| Environmental Federation of | * | |
| Oklahoma; Arkansas | * | |
| State Chamber of Commerce; | * | |
| Associated Industries of Arkansas, | * | |
| Inc.; Wisconsin Manufacturers and | * | |
| Commerce; The Texas Natural | * | |
| Resource Conservation Commission; | * | |
| American Forest & Paper Associa- | * | |

tion; American Iron & Steel      *
Institute; American Petroleum     *
Institute; Chamber of Commerce of    *
the United States; Chemical      *
Manufacturers Association; Corporate   *
Environmental Enforcement Council;    *
Commercial Affairs Committee of     *
the Hazardous Waste Action      *
Coalition; National Association of     *
Manufacturers; National Mining     *
Association; National Petrochemical    *
& Refiners Association; Rubber      *
Manufacturers Association; Utility     *
Solid Waste Activities Group;      *
Washington Legal Foundation;      *
Missouri Chamber of Commerce;     *
Associated Industries of Missouri,     *
                *
     Amici on Behalf      *
     of Appellee.        *

_____

Submitted:  April 22, 1999
Filed:  September 16, 1999

_____

Before BEAM and HANSEN, Circuit Judges, and MOODY,[1] District Judge.

_____

HANSEN, Circuit Judge.

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, sitting by designation.

Harmon Industries, Inc., (Harmon) filed this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (1994), seeking judicial review of a final decision of the United States Environmental Protection Agency (EPA). The district court[2] granted summary judgment in favor of Harmon and reversed the decision of the EPA. The EPA appeals. We affirm.

# I.
## FACTS AND PROCEDURAL BACKGROUND

Harmon Industries operates a plant in Grain Valley, Missouri, which it utilizes to assemble circuit boards for railroad control and safety equipment. In November 1987, Harmon's personnel manager discovered that maintenance workers at Harmon routinely discarded volatile solvent residue behind Harmon's Grain Valley plant. This practice apparently began in 1973 and continued until November 1987. Harmon's management was unaware of its employees' practices until the personnel manager filed his report in November 1987. Following the report, Harmon ceased its disposal activities and voluntarily contacted the Missouri Department of Natural Resources (MDNR). The MDNR investigated and concluded that Harmon's past disposal practices did not pose a threat to either human health or the environment. The MDNR and Harmon created a plan whereby Harmon would clean up the disposal area. Harmon implemented the clean up plan. While Harmon was cooperating with the MDNR, the EPA initiated an administrative enforcement action against Harmon in which the federal agency sought $2,343,706 in penalties. Meanwhile, Harmon and the MDNR continued to establish a voluntary compliance plan. In harmonizing the details of the plan,

---

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Harmon asked the MDNR not to impose civil penalties. Harmon based its request in part on the fact that it voluntarily self-reported the environmental violations and cooperated fully with the MDNR.

On March 5, 1993, while the EPA's administrative enforcement action was pending, a Missouri state court judge approved a consent decree entered into by the MDNR and Harmon. In the decree, MDNR acknowledged full accord and satisfaction and released Harmon from any claim for monetary penalties. MDNR based its decision to release Harmon on the fact that the company promptly self-reported its violation and cooperated in all aspects of the investigation. After the filing of the consent decree, Harmon litigated the EPA claim before an administrative law judge (ALJ). The ALJ found that a civil penalty against Harmon was appropriate in this case. The ALJ rejected the EPA's request for a penalty in excess of $2 million but the ALJ did impose a civil fine of $586,716 against Harmon. A three-person Environmental Appeals Board panel affirmed the ALJ's monetary penalty. Harmon filed a complaint challenging the EPA's decision in federal district court on June 6, 1997. In its August 25, 1998, summary judgment order, the district court found that the EPA's decision to impose civil penalties violated the Resource Conservation and Recovery Act and contravened principles of res judicata. See Harmon Indus., Inc. v. Browner, 19 F. Supp.2d 988 (W.D. Mo. 1998). The EPA appeals to this court.[3]

## II.
## DISCUSSION

## A. The Permissibility of Overfiling

---

[3]Approximately thirty different organizations filed six amicus curiae briefs in support of Harmon Industries.

When reviewing a federal agency's interpretation of a federal statute, a federal court must defer to the agency's interpretation only if it finds that the agency's interpretation is consistent with the plain language of the statute or represents a reasonable interpretation of an ambiguous statute. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984). We review de novo a district court's findings and conclusions regarding the correctness of an agency's statutory interpretations. See Moore v. Custis, 736 F.2d 1260, 1262 (8th Cir.1984).

The Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901-6992K (1994), permits states to apply to the EPA for authorization to administer and enforce a hazardous waste program. See 42 U.S.C. § 6926(b). If authorization is granted, the state's program then operates "in lieu of" the federal government's hazardous waste program. Id. The EPA authorization also allows states to issue and enforce permits for the treatment, storage, and disposal of hazardous wastes. Id. "Any action taken by a State under a hazardous waste program authorized under [the RCRA] [has] the same force and effect as action taken by the [EPA] under this subchapter." 42 U.S.C. § 6926(d). Once authorization is granted by the EPA, it cannot be rescinded unless the EPA finds that (1) the state program is not equivalent to the federal program, (2) the state program is not consistent with federal or state programs in other states, or (3) the state program is failing to provide adequate enforcement of compliance in accordance with the requirements of federal law. See 42 U.S.C. § 6926(b). Before withdrawing a state's authorization to administer a hazardous waste program, the EPA must hold a public hearing and allow the state a reasonable period of time to correct the perceived deficiency. See 42 U.S.C. § 6926(e).

Missouri, like many other states, is authorized to administer and enforce a hazardous waste program pursuant to the RCRA. Despite having authorized a state

to act, the EPA frequently files its own enforcement actions against suspected environmental violators even after the commencement of a state-initiated enforcement action.  See Bryan S. Miller, <u>Harmonizing RCRA's Enforcement Provisions: RCRA Overfiling in Light of Harmon Industries v. Browner</u>, 5 Environmental Law. 585 (1999).  The EPA's process of duplicating enforcement actions is known as overfiling. <u>See id.</u>  The permissibility of overfiling apparently is a question of first impression in the federal circuit courts.  <u>See</u> <u>Harmon</u>, 19 F. Supp.2d at 995.  After examining this apparent issue of first impression, the district court concluded that the plain language of section 6926(b) dictates that the state program operate "in lieu" of the federal program and with the "same force and effect" as EPA action.  Accordingly, the district court found that, in this case, the RCRA precludes the EPA from assessing its own penalty against Harmon. <u>See</u> <u>id.</u>

The EPA contends that the district court's interpretation runs contrary to the plain language of the RCRA.  Specifically, the EPA cites section 6928 of the RCRA, which states that:

> (1) Except as provided in paragraph (2), whenever on the basis of any information the [EPA] determines that any person has violated or is in violation of any requirement of this subchapter, the [EPA] may issue an order assessing a civil penalty for any past or current violation, requiring compliance immediately or within a specified time period, or both, or the [EPA] may commence a civil action in the United States district court in the district in which the violation occurred for appropriate relief, including a temporary or permanent injunction.

> (2) In the case of a violation of any requirement of [the RCRA] where such violation occurs in a State which is authorized to carry out a hazardous waste program under section 6926 of this title, the [EPA] shall give notice to the State in which such violation has occurred prior to issuing an order or commencing a civil action under this section.

42 U.S.C. § 6928(a)(1) and (2).

The EPA argues that the plain language of section 6928 allows the federal agency to initiate an enforcement action against an environmental violator even in states that have received authorization pursuant to the RCRA. The EPA contends that Harmon and the district court misinterpreted the phrases "in lieu of" and "same force and effect" as contained in the RCRA. According to the EPA, the phrase "in lieu of" refers to which regulations are to be enforced in an authorized state rather than who is responsible for enforcing the regulations. The EPA argues that the phrase "same force and effect" refers only to the effect of state issued permits. The EPA contends that the RCRA, taken as a whole, authorizes either the state or the EPA to enforce the state's regulations, which are in compliance with the regulations of the EPA. The only requirement, according to the EPA, is that the EPA notify the state in writing if it intends to initiate an enforcement action against an alleged violator.

Both parties argue that the plain language of the RCRA supports their interpretation of the statute. We also are ever mindful of the long-established plain language rule of statutory interpretation, see Walker v. Dilworth, 2 U.S. (2 Dall.) 257, 259 (1796), as we inquire into the scope of the EPA's enforcement powers under the RCRA. Such an inquiry requires examining the text of the statute as a whole by considering its context, "object, and policy." Pelofsky v. Wallace, 102 F.3d 350, 353 (8th Cir. 1996).

An examination of the statute as a whole supports the district court's interpretation. The RCRA specifically allows states that have received authorization from the federal government to administer and enforce a program that operates "in lieu of" the EPA's regulatory program. 42 U.S.C. § 6926(b). While the

EPA is correct that the "in lieu of" language refers to the program itself, the administration and enforcement of the program are inexorably intertwined.

The RCRA gives authority to the states to create and implement their own hazardous waste program. The plain "in lieu of" language contained in the RCRA reveals a congressional intent for an authorized state program to supplant the federal hazardous waste program in all respects including enforcement. Congressional intent is evinced within the authorization language of section 6926(b) of the RCRA. Specifically, the statute permits the EPA to repeal a state's authorization if the state's program "does not provide adequate enforcement of compliance with the requirements of" the RCRA. Id. This language indicates that Congress intended to grant states the primary role of enforcing their own hazardous waste program. Such an indication is not undermined, as the EPA suggests, by the language of section 6928. Again, section 6928(a)(1) allows the EPA to initiate enforcement actions against suspected environmental violators, except as provided in section 6928(a)(2). Section 6928(a)(2) permits the EPA to enforce the hazardous waste laws contained in the RCRA if the agency gives written notice to the state. Section 6928(a)(1)and (2), however, must be interpreted within the context of the entire Act. Harmonizing the section 6928(a)(1) and (2) language that allows the EPA to bring an enforcement action in certain circumstances with section 6926(b)'s provision that the EPA has the right to withdraw state authorization if the state's enforcement is inadequate manifests a congressional intent to give the EPA a secondary enforcement right in those cases where a state has been authorized to act that is triggered only after state authorization is rescinded or if the state fails to initiate an enforcement action. Rather than serving as an affirmative grant of federal enforcement power as the EPA suggests, we conclude that the notice requirement of section 6928(a)(2) reinforces the primacy of a state's enforcement rights under RCRA. Taken in the context of the statute as a whole, the notice requirement operates as a means to allow a state the first chance opportunity to

initiate the statutorily-permitted enforcement action. If the state fails to initiate any action, then the EPA may institute its own action. Thus, the notice requirement is an indicator of the fact that Congress intended to give states, that are authorized to act, the lead role in enforcement under RCRA.

The "same force and effect" language of section 6926(d) provides additional support for the primacy of states' enforcement rights under the RCRA when the EPA has authorized a state to act in lieu of it. The EPA argues that the "same force and effect" language is limited to state permits because the words appear under a heading that reads: "Effect of State Permit." The EPA contends that the "same force and effect" language indicates only that state-issued permits will have the same force and effect as permits issued by the federal government. The EPA claims that the district court was incorrect when it applied the "same force and effect" language to encompass the statute's enforcement mechanism. We disagree.

Regardless of the title or heading, the plain language of section 6926(d) states that "[a]ny action taken by a State under a hazardous waste program authorized under this section shall have the same force and effect as action taken by the [EPA] under this subchapter." 42 U.S.C. § 6926(d). In this context, the meaning of the text is plain and obvious. "Any action" under this provision broadly applies to any action authorized by the subchapter, and this language is not limited to the issuance of permits. The state authorization provision substitutes state action (not excluding enforcement action) for federal action. It would be incongruous to conclude that the RCRA authorizes states to implement and administer a hazardous waste program "in lieu of" the federal program where only the issuance of permits is accorded the same force and effect as an action taken by the federal government. Contrary to the EPA's assertions, the statute specifically provides that a "[s]tate is authorized to carry out [its hazardous waste program] in lieu of the Federal program . . . and to issue and enforce permits." 42 U.S.C. § 6926(b). Issuance and

enforcement are two of the functions authorized as part of the state's hazardous waste enforcement program under the RCRA. Nothing in the statute suggests that the "same force and effect" language is limited to the issuance of permits but not their enforcement. We believe that if Congress had intended such a peculiar result, it would have stated its preference in a clear and unambiguous manner. Absent such an unambiguous directive, we will apply a common sense meaning to the text of the statute and interpret its provisions in a manner logically consistent with the Act as whole. See Windsor on the River Assoc., Ltd. v. Balcor Real Estate Fin., Inc., 7 F.3d 127, 130 (8th Cir. 1993) (requiring courts to give effect to all the words used by Congress); see also Minnesota Transp. Reg. Bd. v. United States, 966 F.2d 335, 339 (8th Cir. 1992) ("Section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity").

Utilizing a sort of reverse plain language argument, the EPA contends that its approach is logically consistent with the framework of the RCRA. The EPA cites the statute's citizen suit provision for the proposition that limitations on a parties' right to act are expressly stated within the statute itself. See 42 U.S.C. § 6972(b)(1)(B). Section 6972(b)(1)(B) provides that "if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State," then a private citizen suit is not permitted. Id. The EPA argues that if Congress had intended to limit the EPA's right to file an enforcement action, it would have expressly stated its intention as it did in the citizen suit context. We find the EPA's argument unpersuasive. Section 6972(b)(1)(B) of the RCRA provides the parameters for private litigation. In the course of providing such parameters, Congress apparently found it necessary to delineate exactly when and how a private citizen may initiate a civil action against an alleged environmental violator. In contrast, section 6926 of the RCRA addresses the interplay between federal and state authorization. Section 6926 also contains express language that establishes the primacy of states' enforcement rights once the

EPA has granted a state authorization. The mere fact that Congress did not choose to employ the exact same language as contained in an unrelated part of the act does not detract from the plain language used in the state authorization section. Again, Congress provided that the state's program should operate in lieu of the federal program and that the state action should operate with the same force and effect as action taken by the EPA. See 42 U.S.C. § 6926(b) and (d). We find the language contained in the state authorization section of the Act to be as unambiguous as the citizen suit provision. In fact, we find it revealing that, under the citizen suit provision, Congress chose to forbid a private citizen from acting if the EPA or a state was diligently pursing a civil action. See 42 U.S.C. § 6972(b)(1)(B). Utilizing the same reverse plain language argument, one can assume that if Congress intended to allow the federal government and the states to initiate competing enforcement actions, it would have chosen the words "and/or" rather than simply "or." The word "or" indicates that Congress did not contemplate competing enforcement actions between the federal government and the states. Thus, when the EPA has authorized a state program, the plain language of the text indicates that primary enforcement powers are vested in the states. See 42 U.S.C. § 6926.

Even assuming some ambiguity exists in the statutory language, the primacy of the states' enforcement rights, once the EPA has authorized a state to act, is illustrated further through the RCRA's legislative history. The United States House of Representatives stated after its hearings that, through the RCRA, it intended to vest primary enforcement authority in the states. See H. R. Rep. 1491, 94th Cong., 2nd Sess. 24, reprinted in 1976 U.S.C.C.A.N. 6262 ("It is the Committee's intention that the States are to have primary enforcement authority and if at any time a State wishes to take over the hazardous waste program it is permitted to do so, provided that the State laws meet the Federal minimum requirements for both administering and enforcing the law"). The House Report states that although the "legislation

permits the states to take the lead in the enforcement of the hazardous wastes [sic] laws[,] . . . the Administrator [of the EPA] is not prohibited from acting in those cases where the state fails to act, or from withdrawing approval of the state hazardous waste plan and implementing the federal hazardous waste program pursuant to . . . this act." 1976 U.S.C.C.A.N. 6269. The House Report also states that the EPA, "after giving the appropriate notice to a state that is authorized to implement the state hazardous waste program, that violations of this Act are occurring and the state [is] failing to take action against such violations, is authorized to take appropriate action against those persons in such state not in compliance with the hazardous waste title." Id. at 6270. The House Report thus supports our interpretation of the statute - that the federal government's right to pursue an enforcement action under the RCRA attaches only when a state's authorization is revoked or when a state fails to initiate any enforcement action.

There is no support either in the text of the statute or the legislative history for the proposition that the EPA is allowed to duplicate a state's enforcement authority with its own enforcement action. The EPA argues that the statute and legislative history support its contention that it may initiate an enforcement action if it deems the state's enforcement action inadequate. The EPA's argument misses the point. Without question, the EPA can initiate an enforcement action if it deems the state's enforcement action inadequate. Before initiating such an action, however, the EPA must allow the state an opportunity to correct its deficiency and the EPA must withdraw its authorization. See 42 U.S.C. § 6926(b) and (e). Consistent with the text of the statute and its legislative history, the EPA also may initiate an enforcement action after providing written notice to the state when the authorized state fails to initiate any enforcement action. See 42 U.S.C. § 6928(a)(2);1976 U.S.C.C.A.N. 6270. The EPA may not, however, simply fill the perceived gaps it sees in a state's enforcement action by initiating a second

enforcement action without allowing the state an opportunity to correct the deficiency and then withdrawing the state's authorization.[4]

A contrary interpretation would result in two separate enforcement actions. Such an interpretation, as explained above, would derogate the RCRA's plain language and legislative history. Companies that reach an agreement through negotiations with a state authorized by the EPA to act in its place may find the agreement undermined by a later separate enforcement action by the EPA. While, generally speaking, two separate sovereigns can institute two separate enforcement actions, those actions can cause vastly different and potentially contradictory results. Such a potential schism runs afoul of the principles of comity and federalism so clearly embedded in the text and history of the RCRA. When enacting the RCRA, Congress intended to delegate the primary enforcement of EPA-approved hazardous waste programs to the states. See 1976 U.S.C.C.A.N. 6262, 6270. In fact, as we have noted above, the states' enforcement action has the "same force and effect as an action taken by" the EPA. See 42 U.S.C. § 6926(d). In EPA authorized states, the EPA's action is an alternative method of enforcement that is permitted to operate only when certain conditions are satisfied. See 42 U.S.C. § 6926(b) and (e); 42 U.S.C. § 6928(b). The EPA's interpretation simply is not consistent with the plain language of the statute, its legislative history, or its declared purpose. Hence, it is also an unreasonable interpretation to which we accord no deference. Therefore, we find that the EPA's practice of overfiling, in those states where it has authorized the state to act, oversteps the federal agency's authority under the RCRA.

---

[4]The EPA cites Wyckoff Co. v. EPA, 796 F.2d 1197 (9th Cir. 1986), for the proposition that federal enforcement is not prohibited even in states authorized under the RCRA. Wyckoff, however, is more illustrative of the EPA's authority to act in place of a state enforcement action. Wyckoff did not involve overfiling and competing enforcement actions.

**B. Res Judicata**

As an alternative basis to support its grant of summary judgment, the district court concluded that principles of res judicata also bar the EPA's enforcement action by reason of the Missouri state court consent decree. The EPA argues that the state court judgment has no effect on its enforcement action against Harmon because the two actions lack the elements essential for a finding of res judicata. We review de novo a district court's summary judgment determinations. See JN Exploration & Prod. v. Western Gas Resources, 153 F.3d 906, 909 (8th Cir.1998).

Principles of res judicata embodied in the Full Faith and Credit Act, 28 U.S.C. § 1738 (1982), see also U.S. Const. art. 4, § 1, require federal courts to give preclusive effect to the judgments of state courts whenever the state court from which the judgment emerged would give such an effect. See Hickman v. Electronic Keyboarding, Inc., 741 F.3d 230, 232 (8th Cir. 1984). In this case, we must determine whether Missouri law would give res judicata effect to the consent decree entered between Harmon and the MDNR in Missouri state court.

In Missouri, res judicata requires "(1) [i]dentity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made." Prentzler v. Schneider, 411 S.W.2d 135, 138 (Mo. 1966) (en banc).

In this case, the four Missouri law res judicata requirements are satisfied. In both the state court action and the EPA administrative enforcement action, the parties sought to enforce a hazardous waste program pursuant to the RCRA. In both the state action and the agency action, the complaints named Harmon

-14-

as the defendant. In addition, both actions involved the enforcement of regulations based upon identical facts and legal principles. The only dispute is whether the parties are identical.

A party is identical when it is the same party that litigated a prior suit or when a new party is in privity with a party that litigated a prior suit. See United States v. Gurley, 43 F.3d 1188, 1197 (8th Cir. 1994), cert. denied, 516 U.S. 817 (1995). Privity exists when two parties to two separate suits have "a close relationship bordering on near identity." Id. (internal quotations omitted); see also Hickman, 741 F.2d at 233. As the United States and the State of Missouri are not the same party, we must resolve whether their relationship in the enforcement action is nearly identical.

The statutory language of the RCRA provides the framework for the party identity analysis. Pursuant to 42 U.S.C. § 6926(b), the federal program operates "in lieu of" the state program. Section 6926(d) of the same statute mandates that "[a]ny action taken by a State under a hazardous waste program authorized under this section shall have the same force and effect as action taken by the [EPA] under this subchapter." 42 U.S.C. § 6926(d). As we determined in Part II(A) of this opinion, the plain language of the RCRA permits the State of Missouri to act in lieu of the EPA. When such a situation occurs, Missouri's action has the same force and effect as an action initiated by the EPA. Accordingly, the two parties stand in the same relationship to one another. The EPA argues that it has enforcement interests sufficiently distinct from the interests of the State of Missouri. We explained in Hickman, however, that privity under Missouri law is satisfied when the two parties represent the same legal right. See Hickman, 741 F.2d at 233. As the district court correctly indicated, privity is not dependent upon the subjective interests of the individual parties. See Harmon, 19 F. Supp.2d at 998;

-15-

see also Hickman, 741 F.2d at 233.  In this case, the State of Missouri advanced the exact same legal right under the statute as the EPA did in its administrative action. Accordingly, the identity of the parties requirement is satisfied.

The EPA contends that even if principles of res judicata are satisfied under Missouri law, the doctrine of sovereign immunity precludes applying res judicata to the United States unless the United States was the actual party in the prior lawsuit.  Before addressing the merits of the EPA's claim, we note that the EPA did not raise the sovereign immunity defense before the district court.  Harmon argues that in failing to raise the issue at the district court level, the EPA has waived its right to assert sovereign immunity on appeal.  Sovereign immunity, however, is a jurisdictional threshold matter and it is well-established that questions of subject matter jurisdiction can be raised for the first time on appeal.  See DeWitt Bank & Trust Co. v. United States, 878 F.2d 246 (8th Cir. 1989), cert. denied, 494 U.S. 1016 (1990).

Turning to the merits of the EPA's sovereign immunity defense, we conclude that the defense is forestalled by the United States Supreme Court's decision in Montana v. United States, 440 U.S. 147 (1979).  In Montana, the Supreme Court held that "one who prosecutes or defends a suit in the name of another to establish and protect his own right is as much bound as he would be if he had been a party to the record." 440 U.S. at 154 (internal quotations and alterations omitted).  The Court found in Montana that although the United States was not a party to a prior suit, it "had a sufficient laboring oar in the conduct of the state-court litigation to actuate principles of estoppel." Id. at 155.[5]  The EPA argues that it had no laboring

_____

[5]Montana involved principles of collateral estoppel as opposed to res judicata. 440 U.S. at 154.  We do not believe such a distinction is relevant in the context of this case.

-16-

oar in the State of Missouri's enforcement action. Such an argument ignores the RCRA. Unlike the present case, <u>Montana</u> did not involve a statute that authorized the state to proceed "in lieu of" the federal government and "with the same force and effect" as the federal government. In <u>Montana</u>, the United States controlled the details of the prior suit directly. In RCRA cases, however, the federal government authorizes the state to act in its place. It cedes its authority to the state pursuant to the authorization plan contained in the statute. <u>See</u> 42 U.S.C. § 6926(b). The "laboring oar" is pulled on much earlier in the process. It occurs at the authorization stage when the EPA grants the state permission to enforce the EPA's interests through the state's own hazardous waste program. After authorization, the state "prosecutes" enforcement actions "in lieu of" the federal government and operates as if it were the EPA. <u>See</u> 42 U.S.C. § 6926(b) and (d). Hence, pursuant to <u>Montana</u>, the United States must be bound by prior judgments involving state action as authorized by the RCRA. <u>See also</u> <u>United States v. County of Cook, Illinois</u>, 167 F.3d 381, 389 (7th Cir. 1999) (questioning when sovereign immunity to claim preclusion exists); <u>United States v. ITT Rayonier, Inc.</u>, 627 F.2d 996, 1002 (9th Cir. 1980) (applying res judicata against the EPA). Accordingly, we find that principles of res judicata as defined by Missouri law foreclose the EPA's enforcement action against Harmon.

## C. The Statute of Limitations Defense

Harmon argues that the EPA's enforcement claim is barred by a five-year statute of limitations. <u>See</u> 28 U.S.C. § 2462. The district court found that the statute of limitations did not affect this action. Although our decision in this case precludes our need to address this issue and Harmon did not file a cross-appeal, we note that Harmon's statute of limitations claim entirely lacks merit. Harmon continuously polluted from 1973 to 1987. The EPA initiated its enforcement action in 1991. Hence, the EPA's action fell within the five-year statute of limitations.

-17-

See <u>Cornerstone Realty, Inc. v. Dresser Rand. Co.</u>, 993 F. Supp. 107, 114-15 (D. Conn. 1998). Accordingly, Harmon's statute of limitations argument fails.

## III.
## CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.