Gilbert **ASHOFF**, Marjorie Ashoff, **Friends Of The Russian River**, California corporation; and Miles T. Crail, Plaintiffs–Appellants,

v.

**CITY OF UKIAH**, Defendant–Appellee.

No. 97–15010.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1997.

Decided Dec. 2, 1997.

Kenneth B. Finney, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for plaintiffs-appellants.

Rick W. Jarvis, Meyers, Nave, Riback, Silver & Wilson, San Leandro, CA, for defendant-appellee.

Martin W. Matzen, Department of Justice, Washington, DC, for amicus United States of America.

Before: GOODWIN, ALARCON and T. G. NELSON, Circuit Judges.

GOODWIN, Circuit Judge.

This appeal is narrowly focused on the question whether the Resource Conservation and Recovery Act ("RCRA") authorizes citizen suits in federal courts claiming only violations of state standards that exceed the federal criteria. Gilbert Ashoff and others (collectively, "Ashoff") sued for an injunction against the City of Ukiah, alleging that its Solid Waste Disposal Site violated RCRA, the Clean Water Act (the "CWA") and state law. On a motion by the City of Ukiah, the district court dismissed Ashoff's RCRA claim for lack of subject matter jurisdiction and the CWA claim.[1] The court concluded that RCRA did not authorize citizen suits "in federal court to enforce state regulations authorized under Subtitle D," but indicated that Ashoff could file a complaint alleging violations of the federal minimum criteria. Ashoff instead filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## BACKGROUND

RCRA governs the handling of solid wastes, both hazardous and nonhazardous. Hazardous wastes are regulated "from cradle to grave, in accordance with the rigorous safeguards and waste management procedures of Subtitle C." *City of Chicago v. Environmental Defense Fund,* 511 U.S. 328, 331, 114 S.Ct. 1588, 1589, 128 L.Ed.2d 302 (1994). Subtitle D, in contrast, regulates nonhazardous solid wastes and hazardous waste exempted from Subtitle C "much more loosely." *Id.*

The EPA has promulgated regulations providing federal minimum criteria with which all solid waste landfills must comply. After amendments to RCRA in 1984, the EPA passed revised criteria codified at 40 C.F.R. Part 258. Congress provided that, within eighteen months after the passage of the new criteria, "each State shall adopt and implement a permit program or other system [that ensures compliance with the federal criteria.]" 42 U.S.C. § 6945(c)(1)(B). The EPA approved California's permit program in 1993.

## STANDARD OF REVIEW

The lack of subject matter jurisdiction is a question of law and accordingly reviewed de novo. *Evans v. Chater,* 110 F.3d 1480, 1481 (9th Cir.1997). The plaintiff (here the appellant) bears the burden of establishing subject matter jurisdiction.

The interpretation of RCRA is also reviewed de novo. *Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298, 1300 (9th Cir.1997). Were we to find RCRA ambiguous, we would defer to the EPA's interpretation so long as it is reasonable and supported by the language of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

---

**1.** Ashoff appeals only the dismissal of the RCRA claims.

This deference, however, does not extend to "agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice." *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988).

## DISCUSSION

### I

■ We start with the question whether RCRA authorizes citizen suits for violations of federal minimum criteria after the state has adopted a program.[2] We do so for two reasons.

First, Ashoff attempts to conflate this question with the question whether RCRA authorizes citizen suits to enforce state standards that *exceed* the federal minima. He does so in order to recharacterize strong arguments for citizen suits based on federal criteria as arguments for citizen suits based on more stringent state standards. By assuming that RCRA authorizes citizen suits to enforce federal criteria, we narrow the inquiry to the relevant question.

Second, certain language in the district court opinion suggests that once the EPA approves a state program, RCRA no longer authorizes citizen suits under Subtitle C or D. *See* District Court Opinion at 7 ("[T]he court defers to the EPA's interpretation of Subtitle D, and holds that citizens cannot bring suit in federal court to enforce state regulations authorized under Subtitle D."); *id.* at 6 (Under both Subtitles C and D " '[a]fter a state program is reviewed and approved by the EPA, the states administer and enforce their own programs, which arise under state, not federal law.' ") (quoting *Williamsburgh–Around–the–Bridge Block Assoc. v. Jorling,* 1989 WL 98631, at *6

(N.D.N.Y.1989)). This part of the district court's opinion is not the law.

RCRA authorizes citizen suits in approved states. The citizen suit provision states that "any person may commence a civil action on his behalf ... against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)(1)(A).

Thus, if state standards "become effective pursuant to" RCRA, a citizen can sue in federal court to enforce the standard. Under RCRA, Congress has mandated that "each State shall adopt and implement [a program] to assure each solid waste management facility within such State ... will comply with the [revised] criteria." 42 U.S.C. § 6945(c)(1)(B). The State of California created such a program and the EPA approved it. *See* 58 Fed.Reg. 52300 (October 7, 1993).

The federal criteria give the state standards legal effect under federal law. An example illustrates this point. Federal regulations require the daily cover of landfills. 40 C.F.R. § 258.21(a) provides that owner/operators must cover disposed solid waste with six inches of earthen materials at the end of each operating day. In an approved state, however, the state may establish an alternative cover if the owner/operator demonstrates that it functions as well as the six inches of earthen material. 40 C.F.R. § 258.21(b). Whichever alternative the state elects, it is implementing the federal criteria and is therefore effective pursuant to RCRA. Thus, a citizen suit could be brought under RCRA for noncompliance with the state selected alternative.[3]

We note that the EPA has endorsed this position numerous times. *See* 61 Fed.Reg. 2584, 2593 (Jan. 26, 1996) ("[T]he Subtitle D

---

**2.** Both Ashoff and the EPA maintain that RCRA authorizes citizen suits before and after EPA approval of a state program on the basis of the federal minimum criteria. Although it is not entirely clear, the City of Ukiah does not seem to dispute this position.

**3.** A second provision of RCRA authorizes citizen suits even after the EPA has approved a state program. It relates to open dumps, which are any facility or site that fails to meet the federal

criteria promulgated under Section 6944. 42 U.S.C. § 6903(14). RCRA specifically provides that any person violating the open dumping standards is subject to citizen suit under Section 6972. 42 U.S.C. § 6945(a). The EPA correctly notes in its brief that "[n]othing in RCRA suggests that the federal open dumping prohibition is diminished by EPA's determination that a state Subtitle D program is adequate."

Federal revised criteria are applicable to all Subtitle D regulated entities, *regardless of whether EPA has approved the State/Tribal permit program.* Violation of [these] criteria may subject the violator to a citizen suit in Federal court.") (emphasis added); *id.* ("This citizen suit authority under RCRA is an important addition to State/Tribal and Federal enforcement which EPA believes will help ensure compliance with Subtitle D Federal revised criteria."); 49 Fed.Reg. 48300, 48304 (Dec. 12, 1984) ("[I]t is EPA's position that the citizen suit provision of RCRA is available to all citizens whether or not a state is authorized."); 45 Fed.Reg. 85016, 85021 (Dec. 24, 1980) (the EPA stating that "any person, whether in an authorized or unauthorized State, may sue to enforce compliance with statutory and regulatory standards").

## II

■ Having concluded that RCRA authorizes citizen suits on the basis of the federal minimum criteria in states with approved programs, we turn to the question of the appeal: does RCRA authorize citizen suits based on state standards that exceed the federal criteria? We hold that it does not.

To rule otherwise would be inconsistent with the justification for RCRA citizen suits based on the federal criteria in approved states. Because the state program implements the federal criteria, the state's standards become effective pursuant to RCRA and thus are contemplated by RCRA's citizen suit provision. In contrast, RCRA does not authorize suits based on state standards that are more stringent than the federal criteria because they do not become effective pursuant to RCRA. When a state elects to create more stringent standards, nothing in RCRA gives them legal effect. Their legal effect flows from state law.

Consider the example of the federal criterion that requires owner/operators to ensure that the concentration of methane does not exceed twenty-five percent of the lower explosive limit for methane in facility structures. *See* 40 C.F.R. § 258.23(a). Should a state impose a standard that bars concentration of methane in excess of ten percent, this more stringent standard does not become effective pursuant to RCRA. Indeed, the federal standard of twenty-five percent survives the adoption of the state program. *See* 61 Fed.Reg. at 2593. Thus, a citizen could sue under RCRA on the basis of the twenty-five percent standard *but not* on the ten percent standard.

Ashoff disputes this understanding of RCRA's citizen suit provisions. He raises four objections. We can dispose of two of these summarily. First, he contends that RCRA frequently gives states the option to enact more stringent standards and nothing in the language of RCRA bars suits on such standards. This argument, while accurate, is unhelpful. Neither does anything in RCRA compel Ashoff's expansive reading. Second, he asserts that limiting citizen suits in such cases would run contrary to congressional intent. This objection is not persuasive, because congressional intent on this specific question is simply not clear.

Ashoff's other two objections require further consideration.

## A

Ashoff notes that other environmental statutes such as the CWA and the Clean Air Act ("CAA") set up a similar relationship between the federal government and the states and that under such statutes citizens can sue on the basis of more stringent state standards.[4] Under each of these statutes, courts

---

4. Ashoff also argues that Supreme Court precedent supports an expansive reading of the term "any" in RCRA's citizen suit provision. This argument is not persuasive. In *Bennett v. Spear,* —— U.S. ——, —— –——, 117 S.Ct. 1154, 1158–59, 137 L.Ed.2d 281 (1997), the Supreme Court read the phrase "any person" in the citizen suit provision of the Endangered Species Act to include those who have only economic interests in the matter. The Court found that "the obvious

purpose of the particular provision in question is to encourage enforcement by so-called 'private attorneys general'." *Id.* at ——, 117 S.Ct. at 1162.

This argument fails to persuade because the Court was dealing with the question of the size of the class of potential plaintiffs. Accordingly, Congress's desire to enlist private attorneys general is relevant. This does not, however, speak to the question whether RCRA incorporates more

have found that the citizen suit provisions include more stringent state standards. *See Northwest Environmental Advocates v. City of Portland,* 56 F.3d 979, 988 (9th Cir.1995) ("The Supreme Court has acknowledged citizen standing under CWA § 505(a)(1) and (f)(6), to enforce permit conditions based on both EPA-promulgated effluent limitations and state-established standards.") (citing *E.P.A. v. California,* 426 U.S. 200, 224–25, 96 S.Ct. 2022, 2033–34, 48 L.Ed.2d 578 (1976)); *Save Our Health Organization v. Recomp of Minnesota, Inc.,* 829 F.Supp. 288, 291 (D.Minn.1993) (rejecting defendant's argument that under the CAA the state standards were not enforceable by citizen suit because EPA exceeded statutory authority in approving their incorporation into the state plan).

Courts have relied on cases interpreting the citizen suit provisions in each of these statutes to interpret the other's citizen suit provision. *See United States Department of Energy v. Ohio,* 503 U.S. 607, 615, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992) ("[W]e examine first the [RCRA and CWA] citizen-suit sections, which can be treated together because their relevant provisions are similar."); *Hallstrom v. Tillamook County,* 493 U.S. 20, 29, 110 S.Ct. 304, 310, 107 L.Ed.2d 237 (1989) (using CAA case in a RCRA case); *Washington Wilderness Coalition v. Hecla Mining Co.,* 870 F.Supp. 983, 986–87 (E.D.Wash.1994) (discussing RCRA cases in a CWA case).

Unfortunately for Ashoff, these statutes differ in important respects, important enough to warrant different interpretations on this issue. The CWA explicitly calls upon states to create more stringent standards. 26 U.S.C. § 1311(b)(1)(C). Moreover, the citizen suit provision of CWA specifically incorporates orders issued by a state, 26 U.S.C. § 1365(a)(1), and state permit programs. 26 U.S.C. § 1365(f)(6). *See also* 26 U.S.C. § 1342(b). The CAA also explicitly mentions state orders in its citizen suit provision, 42 U.S.C. § 7604(a)(1), as well as standards created by a state program. 42 U.S.C. § 7604(f)(4).

stringent state standards, which deals with the

Because of these differences, one can understand the CWA and the CAA as giving effect to more stringent state standards. *See* 26 U.S.C. § 1365(f) (CWA citizen suits are limited to laws "which [are] in effect under this chapter."); 42 U.S.C. § 7604(f) (same for CAA). RCRA, however, has no such analogous provisions. Accordingly, state standards more stringent than the federal minimum criteria do not become effective pursuant to RCRA. Thus, RCRA does not authorize citizen suits based on such standards.

**B**

Ashoff also argues that limiting claims to those based on federal minima would allow landfill owners to defeat RCRA citizen suits by arguing in every case that the state standard is more stringent. Ashoff claims that this "would create for federal courts the task of comparing multiple, often technical provisions of law in an attempt to determine which was 'more stringent.'" We admit that this line by line reading is a possibility, although we think it an unlikely one. More importantly, such considerations are insufficient to cause us to turn away from the legally correct interpretation of the statute.

To the extent policy considerations influence our interpretation of RCRA, we note that they also support our narrower reading. First, to adopt Ashoff's proposed reading might inappropriately interfere with state sovereignty. The state statutes upon which Ashoff bases his suit do not allow citizen suits. *See* Cal. Pub. Res.Code §§ 45014(b), 45024; Cal. Water Code §§ 13331, 13350(h). Rather, they require that he pursue his grievances through administrative procedures. Cal. Water Code §§ 13300–13321. To allow Ashoff to bring suit in federal court would effectively disregard the choices that California has made and would subject municipalities to litigation the state has chosen not to invite.

Second, Ashoff's reading may chill states from adopting more stringent standards. Perhaps states adopt certain more stringent standards, but only if allowed to control the

legal standards within the suit.

avenues of enforcement. By allowing Ashoff to sue in federal court, this court would limit the flexibility of states to choose the fora for enforcement of their laws. Our reading of RCRA does not support such a result.

AFFIRMED.