**UNITED STATES of America,
Plaintiff,**

v.

**Joseph E. FLANAGAN, James
F. Weber, and Edgar R.
Wilson, Defendants.**

**No. EDCV 99–423 RT.**

United States District Court,
C.D. California.

Dec. 15, 2000.

Alejandro N. Mayorkas, United States Attorney, John S. Gordon, Assistant United States Attorney, Chief, Criminal Division, William W. Carter, Assistant United States Attorney, Public Corruption and Government Fraud Section, Los Angeles, CA, for plaintiff United States of America.

John D. Vandevelde, John S. Crouchley, Lightfoot, Vandevelde, Sadowsky, Medvene & Levine, Los Angeles, CA, for defendant Joseph E. Flanagan.

James R. Asperger, Mark Holscher, O'Melveny & Myers LLP, Los Angeles, CA, for defendant James F. Weber.

Leonard Sharenow, Robert G. Martin, Lida Sparer, Law Offices of Leonard Sharenow PC, Los Angeles, CA, for defendant Edgar R. Wilson.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS INDICTMENT PURSUANT TO FED. R.CRIM.P. 12(b)

TIMLIN, District Judge.

The court, the Honorable Robert J. Timlin, has read and considered defendants Joseph Flanagan ("Flanagan"), Edgar Wilson ("Wilson") and James F. Weber ("Weber") (collectively, "Defendants")'s motion to dismiss the indictment in this case pursuant to Fed.R.Crim.P. 12(b) ("Rule 12(b)"), plaintiff United States of America (the "United States")'s opposition, and Defendants' reply. Based on such consideration, the court concludes as follows:

## I.

### BACKGROUND

On April 28, 1999, the United States filed in this court a four count indictment (the "Indictment"). In the Indictment, Flanagan, Weber and Wilson are each charged with three counts of violating 42 U.S.C. § 6928(d)(2)(A) ("Section 6928(d)(2)(A)") of the Resource Conservation and Recovery Act ("RCRA"). The Indictment alleges that the defendants treated and stored hazardous wastes defined in 40 C.F.R. § 261.23 without authorization of, or permit issued by, the United States Environmental Protection Agency (the "EPA") as required by RCRA.

RCRA "was enacted to protect the national health and environment." *Wyckoff Co. v. EPA,* 796 F.2d 1197, 1198 (9th Cir. 1986). It "governs the handling of solid wastes, both hazardous and nonhazardous." *Ashoff v. City of Ukiah,* 130 F.3d 409, 410 (9th Cir.1997). "Hazardous wastes are regulated 'from cradle to grave, in accordance with the rigorous safeguards and waste management procedures of Subtitle C.'" *Id.* "Like several other federal environmental protection statutes, RCRA provides a mechanism by which the states can administer their own hazardous waste programs 'in lieu of the federal program.'" *State of Washington v. EPA,* 752 F.2d 1465, 1466 (9th Cir. 1985). "The Administrator authorizes a permanent state program when he determines that the program is 'equivalent' to the federal program, consistent with the federal program and other state programs, and adequately enforceable." *Id.*

California had a hazardous waste program authorized by the EPA pursuant to 42 U.S.C. § 6926(b) at the time the events alleged in the indictment occurred. *See* 40 C.F.R. § 272, Subpart F; Final Authorization of State Hazardous Waste Management Program (California), 57 Fed.Reg. 32726 (1992).

Defendants proffer two grounds for dismissal of the Indictment—one jurisdictional and the other non-jurisdictional. First, Defendants contend that this court lacks federal subject matter jurisdiction over this case because the EPA's authorization of California's hazardous waste program [codified in California Health and Safety Code § 25100 et seq.] pursuant to 42 U.S.C. § 6926(b) ("Section 6926") rendered inapplicable the criminal penalty provisions of Section 6928, i.e. it stripped the Department of Justice (the "DOJ") of its enforcement power. In the alternative, Defendants contend that even if the EPA's authorization did not function to abrogate the DOJ's criminal enforcement power (and deprive this court of jurisdiction), the EPA's authorization had the effect of limiting the DOJ enforcement power to enforcement of California law. Defendants therefore contend that the indictment must be dismissed because the United States Attorney's Office did not charge a violation of California law.

It is the position of the United States that authorization of California's hazardous waste program neither affected its criminal enforcement power in the federal courts nor proscribed its authority to charge criminal violations of RCRA.

**1286**

## II.

### ANALYSIS

#### A. Jurisdiction

 Federal courts are courts of limited jurisdiction. *See* U.S. Const. Art. III Sec. 2. Lack of jurisdiction over the subject matter of an indictment is not subject to waiver and may be raised at any time. *United States v. Arbo,* 691 F.2d 862, 865 (9th Cir.1982).

##### 1. Legal Standard for Interpreting RCRA

Determination of the jurisdiction issue hinges on resolution of Defendants' and the United States' competing interpretations of RCRA.

 "[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations omitted). Where a phrase in a statute is ambiguous, the court should "take in connection with it the whole statute . . . and the objects and policy of the law." *Bob Jones Univ. v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983). A court's objective when interpreting a federal statute "is to ascertain the intent of Congress and to give effect to legislative will." *Foxgord v. Hischemoeller,* 820 F.2d 1030, 1032 (9th Cir.1987). In addition, the court may look to the legislative history in an effort to resolve ambiguities. *See United States v. State of Washington,* 872 F.2d 874, 879 (9th Cir.1989). Finally, the court "may not interpret a statute so as to render some of its language superfluous; at any rate, [it] may not do so lightly." *Hearn v. W. Conference of Teamsters Pension Trust Fund,* 68 F.3d 301, 304 (9th Cir.1995).

##### 2. Application

Section 6928 governs federal enforcement of RCRA. Section 6928(d)(2)(A) provides in pertinent part:

> Any person who—
>
> . . . . .
>
> (2) knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter—
>
> (A) without a permit under this subchapter[;]
>
> . . . . .
>
> shall, upon conviction, be subject to a fine of not more than $50,000 for each day of violation, or imprisonment not to exceed two years (five years in the case of a violation of paragraph (1) or (2)), or both.

Section 6926(b) governs the authorization of state programs. Section 6926(b) provides in pertinent part:

> Any State which seeks to administer and enforce a hazardous waste program pursuant to this subchapter may develop and . . . submit to the Administrator an application . . . for authorization of such program . . . [T]he administrator shall . . . publish his findings as to whether or not the conditions . . . have been met. Such state is authorized to carry out such program in lieu of the Federal program under this subchapter in such State and to issue and enforce permits for the storage, treatment, or disposal of hazardous waste.

 The primary question raised by this motion is the meaning of the phrase "in lieu of the Federal program." Defendants contend that "in lieu of the Federal program" language means that the "hazardous waste permit enforcement scheme established by the [RCRA], of which § 6928(d)(2)(A) is a part, has been supplanted by the California program authorized by the [EPA]." Motion to Dismiss Indictment at 1 lns. 7–10. The court disagrees.

As an initial matter, the court concludes that the term "program" as used in Section 6926(b) is ambiguous. The term is not defined by the statute, *see Wyckoff,* 796 F.2d at 1200, and could conceivably, as Defendants appear to suggest, include the enforcement provisions of RCRA, specifically Section 6928(d)(2)(A). The court concludes, however, that such an interpretation would be inconsistent with RCRA as a whole and with its legislative history. *See e.g. id.* at 1200–01 (rejecting the defendant's contention that Section 6926(b) clearly encompassed "the sum of the hazardous waste management authorities and activities described anywhere in subtitle C" and concluding that it could find no clear congressional intent that Section 6926(b) be interpreted to disable the EPA's civil enforcement powers (in this case pursuant to 42 U.S.C. § 6934) "wherever an authorized state hazardous waste program operates 'in lieu of the Federal program.' ").

An interpretation identical to the one proffered by Defendants was rejected by the First Circuit in *United States v. MacDonald & Watson Waste Oil Co.,* 933 F.2d 35 (1st Cir.1991). In *MacDonald,* the defendants contended, in a post-conviction appeal, that the district court lacked jurisdiction over the counts that charged violations of 42 U.S.C. 6928(d)(1) & (2). *See id.* at 43. The defendants, like Defendants in this case "argue[d] that Rhode Island's authorized state program displaced the federal program, leaving no federal crime and ousting the federal court of jurisdiction." *Id.* The defendants, like Defendants in this case "emphasize[d] the statutory language which authorizes the state to carry out its program in lieu of the federal program." *Id.* The defendants further argued that the term "program" ·in Section 6926(b) "incorporates the exclusive responsibility to enforce criminal provisions penalizing the disposal of hazardous wastes." *Id.* at 44.

In refusing to accept the defendants' interpretation, *see id.,* the First Circuit concluded that the "permit under this subchapter" language of Section 6928(d)(2)(A)

meant both permits issued by the Administrator of the EPA and those issued by authorized states. *See id.* In coming to this conclusion, the court looked closely at the legislative history of RCRA. *See id.* ("That § 6928(d), and companion federal criminal provisions, are meant to apply within the states having authorized programs is amply supported by the legislative history."). It noted that before RCRA was amended in 1984, the Section 6928 criminal provision governing transportation of waste without a permit clearly indicated the applicability of the provision post-authorization. *See id.* It further noted that the 1984 amendment, though perhaps substituting slightly ambiguous language, was unaccompanied by a legislative record hinting at Congressional intent to narrow the scope of federal jurisdiction. *See id.* at 45. Indeed the court concluded that the legislative record did indicate Congressional desire to retain a strong federal presence. *See id.* (citing H.R.Conf. Rep. No. 98–1133, 98th Cong., 2d Sess., Oct. 3, 1984 at 110.). It reasoned that "[h]ad Congress intended to impose a hithero unknown limitation upon the scope of laws criminalizing permit violations, its intentions would surely have been manifested." *See id.*

This court adopts the First Circuit's analysis. In addition, a close look at RCRA as a whole reveals further support for the First Circuit holding. For example Section 6928(a) allows the EPA to exercise civil enforcement powers even where a state program is in effect. This demonstrates "that Congress did not intend, by authorizing a state program 'in lieu of a Federal program,' to preempt federal regulation entirely." *Wyckoff,* 796 F.2d at 1200 (applying comparable logic in determining that a review of RCRA does not clearly reveal Congressional intent to disable EPA enforcement power pursuant to 42 U.S.C. § 6934 upon authorization of a state program). Similarly, Congress intended other criminal enforcement provisions of Section 6928(d) to survive authorization of state programs, which at least

indicates a general congressional intent to maintain Federal involvement in criminal enforcement post-authorization. See Section 6928(d)(3), (4) & (5) (criminalizing non-compliance with "regulations promulgated by the Administrator (or by a State in the case of an authorized State program) under this subchapter.").

Finally a review of the legislative record demonstrates that although Congress recognized that "[t]he problems associated with discarded materials ... has traditionally been considered the sphere of local responsibility," it also clearly recognized the need for federal oversight to ensure compliance. See H.R.Rep. No. 94-1491(1), 94th Cong., 2d Sess., Sept. 9, 1976 at 3 *reprinted in* 1976 U.S.C.C.A.N. 6238, 6240; *see also* EPA Enforcement of RCRA—Authorized State Hazardous Waste Laws and Regulations at 3 (submitted by Defendants as Exhibit 1 to the Motion to Dismiss Indictment) ("[W]hile Congress intended that the states have primary authority to administer the program subject to national guidelines ... EPA retained the authority to achieve the purposes and goals of the Act, including the right to take enforcement action in appropriate cases, even after a state program has been approved.").

Defendants contend that *MacDonald* was implicity overruled by the Supreme Court in *United States Department of Energy v. Ohio*, 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). Specifically, Defendants appear to contend that the *MacDonald* decision stands for the proposition that the authorization of state hazardous waste programs by the EPA pursuant to Section 6926(b) metamorphosizes state law into federal law—the proposition rejected by the Supreme Court in *Ohio*.[1]

Defendants' contention appears to rest on their reading of *MacDonald* as holding that "because an EPA-approved state program is authorized pursuant to federal law, violations of state law are violations 'under this subtitle' within the meaning of Section 6928(d)(2)(A)." *See* Motion to Dismiss Indictment at 14 n. 10. The court would agree that implicit in the *MacDonald* opinion is the conclusion that state permits are "permit[s] under this subchapter" because the state program is authorized pursuant to the subchapter, i.e. Section 6926(b). But holding that the state permits are "permits under this subchapter" is not equivalent to holding that violations of state law are violations "under this subchapter," i.e. a violation of federal law. *MacDonald* did not hold, and this court

1. In *Ohio*, the question addressed by the Court was whether Congress waived the United States' sovereign immunity from liability for civil fines imposed by a State (in this case the state of Ohio) for past federal violations of the Clean Water Act [33 U.S.C § 1251 et seq.] (the "CWA") or RCRA. *Ohio*, 503 U.S. 607, 611, 112 S.Ct. 1627. In arguing that a section of the CWA federal-facilities provision authorized civil punitive fines, Ohio pointed, in part, to the language in 33 U.S.C. 1323(a) ("Section 1323") which provides: "[T]he United States shall be liable only for those civil penalties arising under Federal law." *Id.* at 620, 112 S.Ct. 1627. Ohio contended that their fines arose "under federal law" because the state statutes which authorized the fines were approved by the EPA and supplanted the CWA. *Id.* at 624-25, 112 S.Ct. 1627. The Court disagreed. *Id.* at 625, 112 S.Ct. 1627. It reasoned that when Congress used the language "arising under Federal Law" in Section 1323 it intended that it be interpreted the same way as the Court has

interpreted the same language in 28 U.S.C. § 1331, i.e. "exclud[ing] cases in which the plaintiff relies on state law, even when the State's exercise of power in the particular circumstances is expressly permitted by federal law." *Id.* at 625-26, 112 S.Ct. 1627. This court notes that the Defendants also misstate a portion of *Ohio*. The Supreme Court in Ohio did not "interpret[ ] the language of Section 6926(b) to mean that federal RCRA statutes were 'subject to displacement by an adequate state counterpart.' " *See* Motion to Dismiss Indictment at p. 5 lns. 3-4. The Court simply noted that upon authorization the EPA's **permit program** was subject to displacement if the state scheme includes, among other features, sufficiently stringent regulatory standards and adequate provisions for penalties to enforce them. *See Ohio*, 503 U.S. at 611-612, 112 S.Ct. 1627. Whether displacement of EPA's "permit program" also functions to displace federal criminal enforcement under Section 6928(d) was not an issue presented to, or resolved by the Court.

does not decide, that Section 6926(b) transforms a violation of state permit requirements of RCRA-authorized state programs into a federal crime (in fact such a holding would be necessary only if the court concluded that Section 6928(d)(2)(A) was completely supplanted). At most, this court interprets Section 6928(d)(2)(A) as punishing conduct defined in terms of state law.[2]

Defendants also rely on *Harmon Indus. v. Browner*, 191 F.3d 894 (8th Cir.1999). *Browner* is clearly inapposite to the case at hand. In *Browner*, the EPA sought civil penalties against the defendant. While the EPA's administrative enforcement action was pending, a state court approved a consent decree between the state and the defendant releasing defendant from any claim for monetary penalties. *See id.* at 897. The United States District Court held that this release was binding upon the EPA because the state was authorized pursuant to Section 6926(b) to operate its own program, and because "[a]ny action taken by a State under a hazardous waste program authorized under [RCRA] [has] the same force and effect as action taken by the [EPA] under this subchapter." *Id.* at 897–98 (citing 42 U.S.C. § 6926(d)). The Eighth Circuit agreed. *See id.* at 899. *Browner*, however, does not address, even tangentially, the jurisdictional question raised by the instant motion.

Actually, contrary to Defendants' assertion, the Eighth Circuit in *Browner* did not hold "that the federal civil enforcement provisions of Section 6928(a) no longer ap-

ply in authorized states." *See* Motion to Dismiss Indictment at p. 7 lns. 4–5. Put simply, *Browner* is not about if, but about when, the United States can bring a civil enforcement action in federal court after it has authorized a state program. Had the State of California previously prosecuted Defendants criminally for the same conduct alleged in the Indictment, *Browner* might have been applicable by analogy—as California did not, it is not. The court is not persuaded by Defendants' selective citations to *Browner*—in fact much of the language in Browner undermines Defendants' position. *See id.* at 899 ("[RCRA] manifests a congressional intent to give the EPA a secondary enforcement right in those cases where a state has been authorized to act that is triggered ... if the state fails to initiate an enforcement action.").[3]

The court has also read and considered the cases cited by the Defendants respecting the treatment of RCRA citizen suit provisions [42 U.S.C. § 6972] ("Section 6972"), but these citations do not persuade the court that it lacks jurisdiction. *See* Reply in Support of Defendants' Motion to Dismiss Indictment at 11–13. First, it appears that the Ninth Circuit has disapproved this line of cases. *See Ashoff*, 130 F.3d at 411 ("[C]ertain language in the district court opinion suggests that once the EPA approves a state program, RCRA no longer authorizes citizen suits under Subtitle C or D ... This part of the district court's opinion is not the law."). Second, the language of the citizen suit

---

**2.** This conclusion effectively resolves Defendants' contention that RCRA scheme violates principals of federalism. Consistent with the discussion above, the court does not conclude that California is "merely [an] administrative agent[ ] of the federal government." *See* Reply in Support of Defendants' Motion to Dismiss Indictment at p. 10 lns. 6–7. Nor does the court conclude that RCRA authorizes the federal government to enforce state criminal statutes in federal court. *See* Motion to Dismiss Indictment at pp. 13–14 lns. 28–1.

**3.** Defendants cite to the following language in Browner: "The RCRA gives the authority to

the states to create and implement their own hazardous waste program. The plain "in lieu of" language contained in RCRA reveals a congressional intent for an authorized program to supplant the federal program in all respects including enforcement." *Browner*, 191 F.3d at 899. In isolation, this language appears to support Defendants' position. But as discussed above, the position of the Eighth Circuit in *Browner* is not that the federal government loses its civil enforcement power after a state program is authorized. The Eighth Circuit concludes only that the federal government loses its **primary role** in enforcing hazardous waste regulations.

provision is different then the language of Section 6928. *Cf.* Section 6928(d)(2)(A) ("without a permit under this subchapter") *with* Section 6972(a)(1)(A) ("who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter."). Third, these cases dealt with citizen suits rather than governmental enforcement, and so the courts did not have occasion to consider Congress' intent respecting the desired relationship between federal and state enforcement.[4]

Defendants appear to contend that the language of Section 6928(d)(2), which refers to "hazardous waste identified or listed under this subchapter" and the fact that an authorized state program defines hazardous waste after EPA authorization indicate that Congress did not contemplate that Section 6928(d)(2)(A) would be in effect post-authorization and that federal enforcement of RCRA would be permitted in authorized states.

The court disagrees. The EPA requires authorized state programs to include all hazardous wastes listed in 40 C.F.R. § 261 in their regulation of hazardous waste. *See* 40 C.F.R. § 271.9; 42 U.S.C. § 6929. States are not limited, however, to regulating only these wastes. *See* 40 C.F.R § 271.1(i). They may add other hazardous wastes to their programs. In light of these two circumstances, and the court's understanding of RCRA framework as consistently providing federal oversight of authorized states' implementation of their programs, it concludes that this provision in Section 6928(d)(2) was intended by Congress to limit federal enforcement to wastes proscribed by the EPA. *See* Final Authorization of State Hazardous Waste Management Program (California), 57 Fed.Reg. 32726 (1992) ("California also has primary enforcement responsibility, although EPA retains the right to ... take enforcement actions under section[ ] 3008 of RCRA. In several respects, California's regulation of hazardous waste is broader in scope than federal regulation. Unlike more stringent provisions which are enforceable by EPA as part of the authorized program, EPA may not enforce State provisions which are broader in scope. California 'broader in scope' provisions fall principally in two categories: California regulates hazardous wastes which are not regulated under the Federal program, and California requires permits for certain classes of units which are exempt from regulation under federal law.").

Finally, Defendants appear to contend that the fact that the EPA requires states seeking authorization pursuant to Section 6926(b) to include criminal enforcement provisions in their hazardous waste programs, *see* 40 C.F.R. § 271.16, suggests that the EPA interprets RCRA as providing for displacement of federal criminal enforcement post-authorization. The court concludes, however, that requiring states to include criminal enforcement provisions merely advances the general purposes of RCRA, i.e. creating minimal federal standards while encouraging states to take the primary role in the regulation and enforcement of hazardous waste. The EPA's approval of the California hazardous waste program even though California's criminal enforcement provision [Cal. Health & Safety Code § 25189.5] is significantly less stringent then Section 6928(d)(2)(A) strengthens this conclusion. *Cf.* Section 6928(d) (providing for a term of up to five

---

4. The court also notes that there is no judicial consensus on the issue of how Section 6926(b) authorization affects the citizen suit provisions. *See City of Heath v. Ashland Oil, Inc.*, 834 F.Supp. 971, 979–80 (S.D.Ohio 1993) ("The courts addressing whether a citizen suit is available in an authorized state have come to conflicting results. Several courts have held that citizen suits under subsection A are not available in authorized states because the state program supersedes RCRA provisions required for a citizen suit under subsection (A) ... Other courts have held that a RCRA citizen suit is available in a state that has received authorization to implement its own hazardous waste program."). Of course, the issue of which, if any, of these cases were correctly decided, is not before the court.

years imprisonment for a violation of Section 6928(d)(2)(A)) *with* Cal. Health & Safety Code § 25189.5 (providing for a term on no more than one year of imprisonment for a like violation). It seems unlikely that the EPA would have approved California's less stringent criminal enforcement scheme if it believed that Section 6928(d)(2)(A) would be unavailable post-authorization.

Based upon the foregoing analysis, the court concludes that it has subject matter jurisdiction over the criminal conduct alleged in the indictment.

## B. The United States May Charge Criminal Violations of RCRA

The court need not discuss at length Defendants' contention that even if the court has jurisdiction over the conduct alleged in the Indictment, the United States must charge such conduct as a violation of state law. Defendants rely primarily on their view of the effect of EPA-authorization of a state program on Section 6928(d)—a view previously rejected by this court in the earlier portion of its analysis.

Defendants cite only one case addressing the question whether the EPA's authorization of a state program strips the DOJ of its power to enforce federal criminal violations. In *United States v. Elias*, 2000 WL 489732 (D.Idaho March 16, 2000), the trial judge concluded that "(1) EPA-approved state hazardous waste laws supplant their RCRA counterparts; (2) The EPA retains authority to enforce those approved state laws; (3) When the EPA approves the state program, the EPA loses the authority to enforce those RCRA provisions with counterparts in the approved state program; (4) When the EPA approves a state program, the EPA retains the authority to enforce RCRA provisions that have no counterparts in the approved state program." *Elias*, 2000 WL 489732 at *2–3. Because the state of Idaho had codified counterparts to Section 6928(d)(2)(A), the court concluded that Section 6928(d)(2)(A) was unenforceable in Idaho. *See id.*[5]

The *Elias* court based its holding, in part, on an EPA Enforcement Memorandum submitted by the defendant.[6] *See id.* In that memorandum, the EPA took the position that "the only hazardous waste program in effect in that state [with an EPA-approved program] is the state program, and the state laws and regulations are those which must be enforced by EPA should federal enforcement be necessary." However, the EPA Memorandum makes absolutely no mention of the criminal penalty provisions in Section 6928(d). The EPA Memorandum also expressly contemplates the bringing of civil enforcement actions pursuant to Section 6928(a) and not state civil enforcement statutes. Therefore, the proposition that Section 6928(d) is operative post-authorization is actually supported by the EPA Memorandum because it would be inconsistent to conclude that Section 6928(a) is operative post-authorization but Section 6928(d) is not. Therefore the reliance by the court in *Eli-*

---

5. In a motion for reconsideration, this decision was modified. *See United States v. Elias*, 2000 WL 1099977 (D.Idaho April 26, 2000). In his order, the trial judge began by noting that when the EPA authorized Idaho's hazardous waste program, it provided in its regulations that the EPA would retain the authority to exercise its enforcement authority and did not "incorporate by reference" Idaho's enforcement and sanction statutes. *See id.* at *1. The court concluded that by placing this language in the regulations, the EPA was able to retain Section 6928(d)'s penalty provisions. *See id.* at *2. As the EPA did not include analogous language in the code of federal regulations when it authorized California's hazardous waste program, the reasoning in the *Elias* reconsideration order would be inapplicable to this case were the court to adopt the analysis of the trial court in *Elias*.

6. The court believes that the Defendants have submitted the same memorandum (the "EPA Memorandum") to this court. Both documents appear to have been authored in 1982. *See Elias*, 2000 WL 489732 at *4 n. 1; Motion to Dismiss Indictment at 18. The language cited by the Court in *Elias* appears to be identical to the language in the memorandum submitted by Defendants. For the purposes of this motion, the court will assume they are the same.

*as* on the EPA Memorandum appears to be misplaced.

The *Elias* court also refers to language in Section 6928(d)(3), (4) & (5) as support for its ruling. It states that these provisions "clearly contemplate the EPA enforcing state laws, not their analogous counterparts in RCRA, in those states having EPA-approved programs." *See id.* at 3. But these provisions, while perhaps framing a violation of federal law in terms of state law, do not support the proposition that Congress intended that the United States be restricted to alleging violations of state law.

Finally the court in *Elias* reasons that "any other interpretation would ignore the 'in lieu of' language in Section 6926(b)." *See id.* This court disagrees. Once the EPA authorizes a state program pursuant to Section 6926(b): (1) the EPA ceases issuing permits pursuant to its permit program; (2) the EPA's regulations, for example those respecting the characterization of solid wastes as hazardous and nonhazardous, are supplanted; and (3) the state assumes its position as the primary enforcement authority. *See Browner*, 191 F.3d at 899. Certainly these changes render the "in lieu" language meaningful but none of them individually or collectively foreclose the DOJ from criminally prosecuting violations of RCRA pursuant to Section 6928(d).

The court recognizes that if it were to follow the analysis of the court in *Elias*, it would· be inclined to dismiss the indictment. But as the court is unpersuaded by

the ·reasoning of the opinion in *Elias*, it declines to follow it.[7]

The court concludes, therefore, that Section 6928(d)(2)(A) was not supplanted by the EPA's authorization of California's hazardous waste program. A defendant may be found guilty in a federal district court of violating Section 6928(d)(2)(A) where the United States proves to the trier of fact beyond a reasonable doubt that the defendant knowingly treated, stored, or disposed of any hazardous waste identified by the EPA without a permit issued by the State of California.

In light of the Court's foregoing conclusion, only one flaw in the indictment is apparent. Rather than alleging that Defendants stored and treated hazardous waste without "authoriz[ation] [or] permit[ ] by the United States Environmental Protection agency" the indictment should have alleged that Defendants stored and treated hazardous waste without authorization of, or permit issued by, the State of California. Defendants have not asserted in their papers that this error constituted a ground to dismiss the indictment. *See e.g.* Reply in Support of Defendants' Motion to Dismiss Indictment at 2 ("The defendants' motion does not just address a technical defect in the form of a miscitation in the indictment.").

To the extent that Defendants do contend that such an error causes the Indictment to be insufficient, the court rejects it. "An indictment's sufficiency is measured by determining: (1) whether it contains

---

7. Defendants contend that the EPA and Department of Justice have conceded that the United States may only enforce violations of state law in RCRA-authorized states. Defendants cite the April 26, 2000 reconsideration order. *See United v. Elias*, 2000 WL 1099977 (D.Idaho). In the April 26th order, the trial judge began by summarizing his earlier March 16th order. The trial judge then wrote, "[i]n its motion to reconsider, the Government .has largely conceded these points. The Government states in its briefing that 'any federal or state enforcement action for hazardous waste violations must be based on the requirements of state law, including the

state's definition of hazardous waste." *See id.* at *1. This court is unable to conclude from this brief and general statement (interpreting a brief not before the court) that the United States has conceded that it must **charge** a violation of state law and not Section 6928(d)(2)(A) in an EPA-authorized state. The court also recognizes that the United States was seeking reconsideration and may have been limited in what it could effectively argue. But, even if the court had concluded that there was such a concession, it is unclear what weight such a "concession" should have. *See United States v. Miller*, 822 F.2d 828, 832 (9th Cir.1987).

the necessary elements of the crime alleged, (2) whether it informs the defendants of the crime charged with sufficient clarity to allow them to adequately defend against the charges, and (3) whether it is stated with sufficient clarity to bar subsequent prosecution for the same offense." *United States v. Boone,* 951 F.2d 1526, 1542 (9th Cir.1991); *see also* Fed. R.Crim.P. 7(c)(3). The court concludes that the Indictment is sufficient as it makes clear that Defendants are charged with storing and treating hazardous waste without governmental authorization. Defendants have not identified any prejudice resulting from the Indictment's reference to the EPA's authority to administer a permit program rather than the State of California's, or asserted any other ground to support their motion to dismiss the Indictment. *Cf. United States v. Isgro,* 974 F.2d 1091, 1094 (9th Cir.1992) ("Federal courts draw their power to dismiss indictments from two sources ... [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding [or it] may draw on its supervisory powers to dismiss an indictment [if it] find[s] that the defendant is actually prejudiced by ... misconduct.").

## IV.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT: Defendants' motion to dismiss the indictment pursuant to Rule 12(b) is DENIED.